[Civ. No. 19219. First Dist., Div. One. Mar. 30, 1961.]

STANLEY W. TAYLOR, Appellant, v. S & M LAMP COMPANY (a Corporation), Respondent.

Fell & Hines for Appellant.

Irmas & Rutter for Respondent.

COAKLEY, J. pro tem.*—Stanley W. Taylor, plaintiff below, appeals from a judgment of the Superior Court of Santa Clara County in favor of the defendant and respondent, S & M Lamp Company, rendered upon the court's granting defendant's motion to exclude evidence. The first question presented is whether the complaint states a cause of action. It was filed in propria persona and is far from a model pleading. However, in view of the policy of the law to construe pleadings liberally, to the end that cases will be tried on their merits rather than disposed of on technicalities of pleadings (Code Civ. Proc., § 452; *Mix* v. *Yoakum* (1927), 200 Cal. 681 [254 P. 557]), we hold that each count of the complaint states a cause of action in tort, and that the plaintiff should have been permitted to introduce evidence under both counts. Before examining the allegations of the complaint we shall state the rules governing motions to exclude evidence.

"... a motion to exclude evidence based on insufficiency of the complaint is in the nature of a general demurrer and may be sustained only if the allegations of the complaint, deemed true for this purpose, are totally insufficient to support a judgment for plaintiff. And, a demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection." (*Brunson* v. *Babb* (1956), 145 Cal.App.2d 214, 227 [302 P.2d 647].)

*Assigned by Chairman of Judicial Council.

704

■ "All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. ■ The complaint is to be liberally construed. ■ Surplusage is to be disregarded. ■ If upon a consideration of all the facts stated it appears the plaintiff is entitled to any relief at the hands of the court against the defendant, the complaint will be held good although the facts may not be clearly stated or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged. . . . 'Nothing dehors the complaint may be considered.' " (*Domino* v. *Mobley* (1956), 144 Cal.App.2d 24, 27-28 [300 P.2d 324].)

■ Although a plaintiff may have misconceived his remedy, if his complaint states a cause of action upon any theory he is entitled to introduce evidence thereon and it is error to sustain a general demurrer or to grant a motion to exclude evidence. (*Clark* v. *Lesher* (1951), 106 Cal.App.2d 403 [235 P.2d 71].)

■ We now turn our attention to the allegations of the first cause of action. It seeks damages for conversion of personal property belonging to plaintiff. It alleges that plaintiff at all time mentioned was the owner of a business known as Stephens Foundries; that on November 17, 1956, the plaintiff notified the defendant of his ownership of Stephens Foundries; that on November 18, 1956, with full knowledge of plaintiff's ownership and possession of Stephens Foundries, and without plaintiff's consent, the defendant "surreptitiously and outside of ordinary business hours" caused plaintiff's locks to be removed from the foundry premises, and caused the equipment, supplies, books and records of Stephens Foundries to be removed from the premises, and has refused to account to plaintiff for same. These allegations are followed by allegations of specific items of damage caused by the removal of the property.

■ "As held in *Hutchings* v. *Castle*, 48 Cal. 152, no particular form of words is essential in averring a conversion, provided, the fact of the conversion is sufficiently stated, and it is unnecessary to set forth in what way or by what means the conversion was accomplished . . . or to allege that the property was wrongfully or unlawfully converted, since the allegation that it was converted, which is a conclusion of fact . . . implies a wrongful act. . . ." (*Baird* v. *Olsheski* (1929), 102 Cal.App. 452, 454 [283 P. 321].)

The failure of the complaint to use such terms as "fraud," "to defraud creditors," "unlawfully," or "wrongfully" does not render the pleading defective where, as here, such conduct and intent is implied from the ultimate facts alleged. (*Santa Ana Mortg. & Inv. Co.* v. *Kinslow* (1918), 30 Cal.App.2d 107 [85 P.2d 899] ; *Baird* v. *Olsheski, supra.*) Further, the complaint alleged that the removal of the plaintiff's property was carried out "surreptitiously." Webster defines that term as an act done fraudulently or without proper authority. (Webster's New International Dictionary, 2nd ed., unabridged.)

In *MacDonald* v. *Kingsley* (1957), 149 Cal.App.2d 376 [308 P.2d 46], it was held that a complaint stated a cause of action for conversion which alleged (1) ownership and possession of the property converted, (2) the forcible and unlawful taking thereof by the defendants, and (3) the value of said property. We hold that the first count of the complaint in our case states a cause of action for conversion.

The second cause of action is based on allegations that the plaintiff was a judgment creditor of Ben and Eugene Stephens; that at the time of the judgment, and continuing until the conspiracy complained of, the judgment debtors were possessed of substantial assets; that in November 1956, the defendant conspired with the judgment debtors in concealing their assets and thus prevented plaintiff from recovering on his judgment, thereby damaging him in the amount of the judgment, to wit, $29,397.84. In support of the judgment which followed upon the court's granting its motion to exclude evidence, the respondent argues that since a conspiracy is not actionable in and of itself, in the absence of an actionable wrong, *a fortiori,* the bare allegation of a conspiracy does not state a cause of action. The answer to this argument is that the second cause of action alleges, in essence, the commission of a tort by the judgment debtors, to wit, a concealment of their assets for the purpose of defrauding their principal creditor, the plaintiff, and that they did so with the assistance and in concert with the defendant.

"A tort has been defined as the unlawful commission or omission of an act infringing on the right of another or causing him substantial loss of money . . . or as the violation of a duty imposed by general law or otherwise on persons occupying the relation to each other that is involved in a given transaction. The vagueness of such definitions stems mainly from the fact that the field of tort law includes

a great variety of conduct and is in the process of constant expansion. It seems that a tort cannot be more definitely described than as a wrong, not consisting in mere breach of contract, for which the law gives the injured party an appropriate remedy against the wrongdoer.'' (47 Cal. Jur.2d 693.)

 ''Civil liability for conspiracy to commit a tort has long been recognized in this state. . . . Generally speaking, the liability exists where there has been formed and operated a conspiracy to accomplish by concerted action a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means which results in actual damage.'' (*Clark* v. *Lesher, supra* (1951), 106 Cal.App.2d 403, 409.)

 It is contrary to public policy for a debtor to convey or to conceal his property for the purpose of defrauding his creditors. (Civ. Code, § 3439.07 and Pen. Code, §§ 154 and 155.)

''Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights.'' (Civ. Code, § 1708.)

 It is established that one who purposely and wrongly induces another not to perform a contract thereby commits a tort and is liable for the harm caused. (*Elsbach* v. *Mulligan* (1943), 58 Cal.App.2d 354 [136 P.2d 651].) Equally, a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages.

 In addition to the allegations of the second cause of action heretofore summarized there were allegations as to bankruptcy proceedings instituted by Ben and Eugene Stephens. The respondent argues that the said allegations must be disregarded, and the complaint examined without them. It is unnecessary for us to discuss the validity of the defendant's argument that the bankruptcy allegations must be disregarded because we hold that the second count states a cause of action in tort without reference to the bankruptcy allegations. Assuming that such allegations are irrelevant, under the rule of *Domino* v. *Mobley, supra,* 144 Cal.App.2d 24, they may be disregarded.

The court's ruling excluding evidence was therefore erroneous as to both causes of action and the judgment based on such error must be reversed.

 Before turning to another subject we take this opportunity to direct the attention of judges who conduct pre-

trials, to that portion of the pretrial order which, in connection with the statement of issues, reads, "Assuming there was such a conspiracy, is a legal cause of action stated in the complaint with respect thereto?" One of the basic purposes of pretrial is to clarify and define the issues, and in that connection, to examine the pleadings for necessary amendments. If, as in this case, the question of the sufficiency of a pleading is raised at a pretrial conference it should be resolved before the pretrial order is signed and the case set for trial. Among the ways it may be resolved are: (1) by the voluntary withdrawal as an issue, (2) by directing an appropriate amendment, and continuing the pretrial conference until the pleading issue is resolved, (3) by reformulating the issue at the pretrial conference and setting it forth in the pretrial order, or (4) by a ruling that no issue is raised with respect to the allegations in question. To pass the question to the trial judge, to be raised, a third time, at the start of the trial, as in this case (the demurrer to the cause of action involved had been previously overruled), patently defeats the purposes of pretrial. Conceivably weeks of trial preparation and large expenditures of money might be incurred under such circumstances, all to no avail if the trial judge grants a motion to exclude evidence. Additionally, it subjects courts and attorneys to criticism, and is an imposition upon jurors and witnesses present for the trial, to be kept waiting, perhaps for a considerable time, while the issue is argued and resolved. The practice should be avoided.

 Our next inquiry deals with the legal effect of a charging order (Corp. Code, § 15028.) The subject receives our attention because of uncertainty on the part of the trial court as to the legal effect of such an order, as applied to the asserted facts in the case.

Prior to California's adoption of the Uniform Partnership Act (Corp. Code, § 15001 et seq.) a judgment creditor of a partner whose personal debt, as distinguished from partnership debt, gave rise to the judgment, could cause a sale at execution of partnership assets, including specific items of partnership property, to satisfy his judgment. (*Jones* v. *Thompson* (1859), 12 Cal. 191.) A judgment creditor no longer enjoys such right. Thus, Corporations Code, section 15025, subdivision (2) (c), provides:

"(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. . . ."

And, Corporations Code, section 15028, provides:

"(1) On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect to the partnership, and make all other orders, directions, accounts, and inquiries which the debtor partner might have made, or which the circumstances of the case may require."

Corporations Code, section 15028, corresponds to section 28 of the Uniform Partnership Act. Section 28 was taken from the English Partnership Act of 1890 (68 C.J.S. 405; *Ribero* v. *Callaway* (1948), 87 Cal.App.2d 135 [196 P.2d 109]). Lord Justice Lindley gave the following reason for the English rule forbidding execution sale of a partner's interest in the partnership to satisfy his nonpartnership debt:

"When a creditor obtained a judgment against one partner and he wanted to obtain the benefit of that judgment against the share of that partner in the firm, the first thing was to issue a *fi. fa.*, and the sheriff went down to the partnership place of business, seized everything, stopped the business, drove the solvent partners wild, and caused the execution creditor to bring an action in Chancery in order to get an injunction to take an account and pay over that which was due the execution debtor. A more clumsy method of proceeding could hardly have grown up." (28 Wash. L. Rev. 1; see also 9 Cal. L. Rev. 117.)

It was to prevent such "hold up" of the partnership business and the consequent injustice done the other partners resulting from execution against partnership property that the quoted code sections and their counterparts in the Uniform Partnership Act and the English Partnership Act of 1890 were adopted. As we view those code sections they are not intended to protect a debtor partner against claims of his judgment creditors where no legitimate interest of the partnership, or of the remaining or former partners is to be served.

Although the complaint makes no reference to a charging order or to a sale at execution the briefs deal largely with questions of the rights, if any, acquired by the plaintiff under either, or both, a charging order on which he relies, and his

purported purchase of certain partnership interests at the execution sale. In order, therefore, to discuss the question of law presented we must refer to alleged facts gleaned largely from the documents introduced by stipulation at the trial (despite the order excluding evidence), the discussions between court and counsel when the case was called for trial, and from the briefs on appeal. Ordinarily, we would not consider alleged facts appearing for the first time in briefs on appeal. We do so in this instance only because evidence thereof was excluded by the trial court, and on remand the appellant must be given an opportunity to prove them. We are concerned only with guiding the trial court to a proper application of the statutes and legal principles discussed herein if the facts asserted, but excluded from evidence, are found by that court to be true. In referring to "alleged" facts we mean, therefore, not only the allegation found in the pleadings but also the assertions of fact appearing in the other sources referred to.

Ben and Eugene Stephens, and R. K. Corbin, a nephew, were partners in a business known as Stephens Foundries, in Gilroy, California. The plaintiff held a judgment for approximately $30,000 against Ben and Eugene, individually, but not against Corbin or the partnership. To enforce his judgment plaintiff obtained a charging order against the interest of Ben and Eugene in the partnership. No court order supplementing the charging order was obtained or sought by the plaintiff. Instead he obtained a writ of execution on his judgment and caused the sheriff to levy on "all the beneficial rights and interests of Ben J. Stephens and Eugene S. Stephens, in the partnership commonly known as 'Stephens Foundries' . . . ." The sheriff thereupon "conducted a sheriff's sale under the writ of execution and appellant purchased whatever interest the sheriff was selling."

Plaintiff further alleges that Ben and Eugene filed bankruptcy petitions and were adjudicated bankrupt in the federal district court on the day of the sheriff's sale; that two days prior thereto a partnership dissolution agreement was entered into, as a part of which Ben and Eugene purported to transfer all of their interest in the partnership to Corbin "subject to the charging order," in return for Corbin's assumption of the partnership debts in an undisclosed amount; that Corbin immediately purported to transfer the assets of the partnership or former partnership to the defendant, who was a customer of Stephens Foundries, in consideration of

a promise of employment and $500; that Corbin acknowledged on deposition that he had not paid any of the partnership debts and had no plan for paying them, that he had never received the $500 from defendant, that he did not enter defendant's employ and that he entered into the transaction only to accommodate his uncles; that Ben and Eugene immediately entered defendant's employ and carried on the foundry business on behalf of defendant in a new location; that immediately after the sheriff's sale plaintiff took possession of all of the partnership assets, placed locks on the premises and notices on the doors, the notices reading that plaintiff was holding the property pending the termination of the bankruptcy proceedings; that plaintiff immediately notified defendant by letter and telephone calls, that he had obtained a charging order and had purchased the interests of Ben and Eugene Stephens at the sheriff's sale, and had taken possession and ownership thereof; notwithstanding, the defendant surreptitiously removed the locks and carried away the equipment, supplies, books and records of Stephens Foundries, that the property was never turned over to the trustee in bankruptcy; and that Ben and Eugene were not discharged in bankruptcy.

On the basis of some of the foregoing allegations (not all of them being before the court because of its ruling excluding evidence), the court, in due course, filed a memorandum of opinion, the material portions of which read as follows:

"The charging order of October 24, 1956 impressed a lien on the interests of Ben and Eugene Stephens in the partnership, but the proceeding thereafter followed by plaintiff did not conform to the law. Another order could have been obtained directing the sale of said interests. A sheriff's sale is not proper in the premises.

"Charging orders on partnership interests have replaced levies of execution as the remedy for reaching such interests."

This is a correct statement of the law as applied to the ordinary case, i.e., (1) where the partnership continues a bona fide existence and (2) where there is no transfer of partnership assets without a fair and adequate consideration or in fraud of creditors of either the partnership or of individual partners. But, if as alleged, (a) dissolution occurred (see Corp. Code, §§ 15029 and 15031 as to definition and causes of dissolution), or (b) there was a transfer of partnership assets to one or more of the remaining partners, or to a third party, without a fair and adequate consideration or

for the purpose of defrauding creditors of the partnership or of individual partners, then we do not have the ordinary and usual situation which Corporations Code, sections 15025 and 15028, are designed to protect. To apply the general rule as a shield to such a situation is contrary to reason and would violate public policy.

Counsel has referred us to no authority and our independent research discloses none, which even remotely touches upon the alleged facts of this case. *Sherwood* v. *Jackson* (1932), 121 Cal.App. 354 [8 P.2d 943] and *Baum* v. *Baum* (1959), 51 Cal.2d 610 [335 P.2d 481], are the only cases cited by respondent in support of the judgment with respect to the first cause of action, under which the charging order issue arose. Those cases are readily distinguishable from the facts asserted in our case and are not controlling. Primarily, no charging order had been issued in either case. In *Sherwood* an application had been made to the court for dissolution of the partnership prior to levy of execution but it does not appear that the partnership had in fact been dissolved. Furthermore there was no element of fraudulent transfer of assets in that case. In *Baum*, neither dissolution nor fraudulent transfer was present.

Counsel for defendant acknowledges that plaintiff's charging order impressed a lien on the partnership interest of Ben and Eugene Stephens. This is the legal effect of a charging order because " 'In its broadest sense and common acceptation, it [a lien] is understood and used to denote a legal claim or charge of property, either real or personal, as security for the payment of some debt or obligation. . . . It includes every case in which personal or real property is charged with the payment of a debt.' " (*Gray* v. *Horne* (1941), 48 Cal.App.2d 372 [119 P.2d 779]; see also Civ. Code, §§ 2874 and 2881.)

Clearly the purpose of the lien of a charging order is to permit the judgment creditor to realize on his judgment against an individual partner by appropriate supplementary proceedings or orders against that partner's interest in the partnership. (Corp. Code, § 15028.) Corporations Code, section 15026, defines that interest as, "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

It is equally clear that there will be no profits or surplus out of which the lienholder may satisfy his lien if the partnership assets are transferred to a third person, directly or

indirectly, and placed beyond the reach of the lien, without the payment to the partnership, or in the event of dissolution to the person charged with winding up the partnership affairs, of a fair and reasonable consideration. We hold that such a transferee, acting with knowledge of the charging order, commits a tort for which he is liable in damages to the person injured thereby.

 It is unnecessary for us to determine whether the alleged acts of the defendant constituted a conversion in the accepted sense. Ordinarily an action for conversion does not lie unless the plaintiff was in possession of, or had a right to the immediate possession of the property at the time of the alleged conversion. (48 Cal.Jur.2d 607; *Thomson* v. *Culver City Motor Co.* (1935), 4 Cal.App.2d 639 [41 P.2d 597].) The holder of a charging order is neither the owner, the possessor nor entitled to immediate possession of the specific partnership property, in the absence, at least, of a valid court order supplementary to his charging order. (Corp. Code, §§ 15025, 15028.) There is authority for the proposition, however, that one who has a lien on personal property, though not in possession or entitled to immediate possession, may recover damages from one who wrongfully assumes dominion over the property subject to the lien and who diminishes the value of the security or operates to make it less effectual. (14 C.J.S. 6; *McCaffey Canning Co.* v. *Bank of America* (1930), 109 Cal.App. 415 [294 P. 45], citing *Hansbrough* v. *D. W. Standrod & Co.* (1930), 49 Idaho 216 [286 P. 923].)

Where a legal wrong has been committed it is the duty of the court to grant appropriate relief. No principles of law are more firmly established than: "No one can take advantage of his own wrong" (Civ. Code, § 3517), and "For every wrong there is a remedy" (Civ. Code, § 3523).

To withhold relief upon count one of the complaint, under the alleged circumstances of this case, solely because the plaintiff has misconceived his remedy, or because the facts alleged do not fit the pattern of one of the more commonly designated causes of action, e.g., conversion, would render "idle and meaningless" the legislative expression of the quoted maxims. (See *Hogan* v. *Anthony* (1919), 40 Cal.App. 679 [182 P. 52].) ". . . an action cannot be defeated because it is not properly named, or because the form of remedy has been mistaken." (1 Cal.Jur.2d 608; *Domino* v. *Mobley, supra,* 144 Cal.App.2d 24.)

.

We, therefore, hold that the plaintiff may recover damages upon his first cause of action, even though he does not prove ownership, possession or right to immediate possession of the partnership property, if the other proof is in accord with his allegations as discussed herein. This conclusion is not altered by the fact, alleged by the defendant, that it had no knowledge of the sheriff's sale and no knowledge of the partnership dissolution at the time it purchased the assets of Stephens Foundries, provided the other facts discussed herein are established, viz., (1) the existence of the charging order, and defendant's knowledge thereof; (2) transfer of the assets to the defendant without payment of a fair and reasonable consideration; and (3) defendant knew at the time that the transfer would diminish the value of the plaintiff's lien.

We refrain from expressing an opinion as to the rights, if any, which the appellant acquired through purchase at the sheriff's sale. On the one hand we know of no reason why, when a partnership has been dissolved, and the purposes which Corporations Code, sections 15025 and 15028 are designed to protect no longer exist, a judgment creditor of an individual partner should be prohibited from pursuing the same remedy of levy and sale at execution which is available to judgment creditors in nonpartnership matters. On the other hand if, as alleged, the levy in this case was made some weeks before dissolution, and at a time when such levy was forbidden by Corporations Code, section 15025, subdivision (2) (c), a separate question would be presented; specifically, what rights, if any, are acquired by a purchaser at a sale based upon a void or a voidable levy where dissolution of the partnership intervened between the date of the charging order and the date of the sheriff's sale? Under our view of the law governing the rights of the holder of a charging order, in relation to the alleged facts of this case, which for the purposes of a motion to exclude evidence must be treated as true (39 Cal.Jur.2d 448), the appellant's rights may be enforced without regard to the sheriff's sale.

We also refrain from discussing superior rights, if any, of third parties, e.g., partnership creditors (see Corp. Code, §§ 15038, 15041) because that question has not been raised.

The judgment is reversed, and the case remanded for trial upon both causes of action.

Tobriner, Acting P. J., and Duniway, J., concurred.