Erwin E. HASSEN, Appellant,

v.

Sam JONAS, Trustee of the Estate of Pomona Properties, Inc., doing business as Steve's Ranch Market, Bankrupt, Appellee.

No. 20415.

United States Court of Appeals
Ninth Circuit.

Feb. 3, 1967.

Rehearing Denied May 15, 1967.

James J. Arditto, Los Angeles, Cal., for appellant.

Benjamin E. King, Robert H. Thau, of Buchalter, Nemer, Fields & Savitch, Los Angeles, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and BARNES and ELY, Circuit Judges.

ELY, Circuit Judge.

One Hassen appeals from a decision of the United States District Court in a bankruptcy case. Pomona Properties, Inc. is the bankrupt. Jonas, the trustee in bankruptcy, filed in the bankruptcy proceeding an "Application for Order Requiring Return of Converted Assets and to Set Aside Preferences and Fraudulent Conveyances." The trustee asserted that Hassen was under an obligation to pay $52,500 to the trustee for the benefit of the bankrupt estate and the creditors of the bankrupt. Hassen answered the trustee's application, denying any such obligation. Hearings on the application were held before a referee in bankruptcy, who decided in favor of the trustee. Hassen filed a petition for review of the referee's decision. The District Court, after a hearing, affirmed the referee's decision and order except that it reduced the amount from $52,500 to $52,000. We have the case on Hassen's appeal from the District Court's decision. Bankruptcy Act § 24, 11 U.S.C. § 47.

■■ The first item which the appellant was ordered to pay to the trustee is $4,000. The bankruptcy of Pomona Properties, Inc. was adjudicated on April 5, 1961. Hassen, who was accustomed to conducting the affairs of Pomona Properties as if they were his own, personally collected $5,400 in rents from tenants of properties owned by the bankrupt. This money was collected between May 10th and June 15th, 1961, when, of course, it belonged to the trustee for the benefit of the bankrupt estate and the creditors. Hassen's answer to the trustee's claim was that he had paid out all the rent money which he had collected, and more, to creditors of Pomona. This was no defense. It is the purpose of bankruptcy to cause whatever assets the bankrupt has to be distributed ratably among the creditors. Hassen's payment of the rent money to some of the creditors would be of benefit to the other creditors only in an indefinite fractional amount. In the instant case the insolvency was apparently severe; hence, the

benefit to the general unsecured creditors was small. The referee gave Hassen $900 credit and the District Court allowed an additional $500 credit against the $5,400 rent money, apparently for the reason that $1,400 of the payments made by Hassen was paid to creditors who would have been entitled to payment in full from the bankrupt estate. The trustee has not appealed from the allowance of these credits, and we do not discuss its propriety.

■ Another item for which repayment was ordered is $20,000 which Hassen collected from the bankrupt by cashing two postdated checks given to him by Pomona Properties, Inc. The cashing occurred after Hassen, so the trustee charges, knew or had reason to know of the insolvency of Pomona.

Pomona Properties, Inc. was a corporation acquired by Hassen and another person to be the corporate entity under which they would engage in the marketing business, principally food marketing. A market had been operated at the same location which Pomona leased for its market. Pomona purchased the inventory of market merchandise from the former operation, McDaniels Market, for some $55,000, $42,000 of which had been paid by the transfer to McDaniels Market, at Hassen's direction, of certain second mortgages on a group of apartment buildings, the face amount of the second mortgages being $42,000. Pomona's market was to open on January 30, 1961. Having only $100 of money capital, it needed cash. On or about January 26, 1961, Hassen loaned it $20,000, receiving in return two checks for $10,000 each, one dated February 4th and the other February 13th, 1961. Apparently, Hassen hoped that one Dadigan, who had agreed to take a share in the market venture and to put cash into it, would do so by the time the two $10,000 checks became cashable. These checks were cashed by Hassen, clearing the bank on which they were drawn on February 8th and February 20th, 1961.

As we have seen, the trustee asserted and the District Court found that Has-

sen knew or had reason to know, when he collected this repayment of his $20,000 loan, that the market corporation was insolvent. If this was true, Hassen, who was in complete control of the corporation and had supplied such assets as the corporation had, was in the best position to know it. The trustee, in the proceeding here under review, presented evidence, principally through a certified public accountant of long experience. This expert had searched out all available evidence of assets and liabilities of the corporation, and he expressed the conclusion that the corporation was insolvent on the pertinent dates. Hassen testified to the contrary, placing on certain assets values which would have made the corporation solvent. The effectiveness of Hassen's testimony was greatly impaired by the absence of corporate records of the type usually made and preserved.

Among the assets which Hassen attributed to the bankrupt corporation, in testifying to its solvency, was the equity in the apartment building mentioned above, an equity which Hassen owned through another corporation. He had transferred this equity to Pomona, taking in return Pomona's demand note in his favor for $60,000. The equity which he transferred to Pomona was subject to a first mortgage of $150,000, and the second mortgage, above referred to, of $42,000. In December of 1961, the first mortgage was foreclosed, rendering worthless, not only the equity which Hassen had transferred to Pomona in return for Pomona's note for $60,000, but also the $42,000 of second mortgages which Hassen had transferred to McDaniels Market and for which Pomona had given him, Hassen, its note for $42,000. It was not clear error for the referee and the District Court to treat the equity, described above, as of no value, and to treat the demand note for $60,000 as a mature debt. As to the $42,000 second mortgage, McDaniels Market, so far as appears, took the loss.

■ The third item of the trustee's claim against the appellant pertains to

$28,000 which the appellant, on February 20, 1961, withdrew from the bankrupt's cash on hand. On the following day, appellant returned $8,000 to the bankrupt. Two days later he returned $14,000, and on March 1, 1961, eleven days after the taking, he restored the remaining $6,000 plus an additional $2,000. There is no showing that the restored funds were not expended by the bankrupt's active management in the indiscriminate discharge of the bankrupt's obligations in the regular course of business. The trustee filed his application for relief against the appellant on April 19, 1963, more than two years after the April 5, 1961, adjudication of bankruptcy and, therefore, beyond the period within which the trustee might properly have attacked transfers as conferring improper preference. See 11 U.S.C. §§ 29(e), 96. The record reveals no reason for the delay.

In order to grant relief as to the $28,000, the referee applied section 3439.07 of the California Civil Code, which provides,

> "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

To so employ it under the facts of this case was, we believe, a misapplication of the quoted section.[1] The effect of the legislative declaration that transfers within the statute are fraudulent is that such transfers are deemed void as to creditors. Heffernan v. Bennett & Armour, 110 Cal.App.2d 564, 584, 243 P.2d 846 (1952). The transfer being void, a creditor can reach the property as though the transfer had not been made. Bekins v. Dieterle, 5 Cal.App. 690, 91 P. 173 (1907). Where the person responsible for the fraudulent transfer has himself remedied the situation by returning the transferred property, the statutory purpose has been satisfied.

Without more support than is seen from the record before us, it would be manifestly inequitable to require Hassen, by order of the Bankruptcy Court, to pay to the trustee an additional $28,000, plus interest from the date of the withdrawal, when it is undisputed that the money, plus an additional $2,000, was repaid by Hassen within eleven days of the taking and when, so far as can be seen from the record, no damage resulted to the creditors. A court of bankruptcy is a court of equity. Prudence Realization Corp. v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293 (1942). In effect, Hassen has been ordered to pay to the trustee $28,000, plus interest, as a penalty for an alleged wrongful intent which attended his withdrawal of the money, even though there is no claim that the order rests upon any wrongful act committed by Hassen following his restoration of the funds. We find no persuasive precedent for the imposition of such a penalty.

Under the California statute, a fraudulent transferor may be liable in tort. Taylor v. S & M Lamp Co., 190 Cal.App. 2d 700, 12 Cal.Rptr. 323 (1961). Perhaps the trustee might have sought to invoke that remedy, in which event Hassen would have been safeguarded against in-

---

1. In his concurring opinion Judge Barnes writes, "I cannot agree with him [Judge Ely] that Section 3439.07 of the California Civil Code, upon which the referee relied, was 'misapplied.'"

Judge Barnes either misconstrues the language of the principal opinion or misinterprets the import which was intended by the author. The principal opinion does not say that the conveyance, the withdrawal of the funds, was not fraudulent. It merely says that "to so employ" the section, that is, to employ it so as

"to grant relief as to the $28,000," was a "misapplication." Does Judge Barnes write anything to the contrary? He writes, "But it [the section] was relied upon, per se, to authorize the remedy. This I think, was error." The author of the principal opinion agrees and can see no essential disagreement between Judge Barnes and himself. If, in erroneously granting a remedy, there was misreliance upon the section, was there not "misapplication"?

justice by the requirement that there be proof of damage resulting from the act claimed to be tortious. With reliance upon the California civil statute, the referee apparently also found support in Hickson v. Thielman, 147 Cal.App.2d 11, 304 P.2d 122 (1956). There, California's intermediate appellate court assumed that there had been no return of money which had been fraudulently taken. We do not have that problem here. As an alternative holding, the court wrote,

> "But there was evidence to support the findings that Medley conspired with others to defraud plaintiffs and if, as the court found, she received the money with that intention and purpose, returning the money to [the debtor] would not have relieved her of responsibility. * * * "

The court did not complement that language with authority or with reasoning. And, in any event, a strict application of the rule there stated cannot in all cases be proper. Literally applied, it would require that Hassen pay the penalty of $28,000 if he withdrew the like amount with a wrongful intent and restored the money within one hour or one instant. A court of equity should not so hold.

The philosophy of the bankruptcy law contemplates that an insolvent's assets are to be devoted, so far as they extend, to the pro rata payment of the insolvent's creditors. Toward the accomplishment of that end, the Bankruptcy Act makes clear provision for remedies which, if invoked with prescribed and desirable timeliness, would afford a proper avenue of relief to the trustee. Furthermore, if the creditors were truly damaged by Hassen's withdrawal of the money and his retention of a part of it for one day, a part of it for three days, and the remainder for eleven days, then application of the California statute should have been sought in a less summary proceeding predicated upon the theory of tort. We cannot escape the conclusion that there was strain, if not torture, here imposed upon the statute. We are disinclined to create, by court decision, a new rule of liability and a new measure of damages to attend it when there are already defined remedies under existing federal and California law.

Insofar as the judgment directs appellant to pay $28,000, with interest from February 20, 1961, to the trustee, the District Court, upon remand, shall order that it be vacated. In its other particulars, the judgment is affirmed.

Affirmed in part; reversed in part.

BARNES, Circuit Judge (concurring).

I concur in the result reached by Judge Ely. I cannot agree with him that Section 3439.07 of the California Civil Code, upon which the referee relied, was "misapplied." I think it was applicable, and rendered the conveyance fraudulent. But it was relied upon, per se, to authorize the remedy. This I think, was error. The referee sought to achieve the remedies suggested by Section 3439.09. But while the transfer was fraudulent under Section 3439.07, the remedies suggested by the referee was its recovery, by the trustee, even though it had been previously returned by Hassen. The only logical basis for such a remedy would be Section 3439.09 (a) (2) which permits a creditor to "[d]isregard the conveyance and attack or levy execution upon the property conveyed." The property, having already been returned, could not, in my opinion, be again reached under any remedy provided by Section 3439.09.

The Fraudulent Conveyance Act constitutes a two step process. First, the facts are tested by Section 3439.07 to decide if a transfer was fraudulent. Second, a creditor can try to remedy a fraudulent transfer under Section 3439.09. In this case the facts come within Section 3438.07, and that section was properly applied so that the law declared the transfer to have been fraudulent. Up to this point there was no error. However, the referee permitted the second step, which I say was necessarily premised upon Section 3439.09. It was in applying that section that the referee

committed error, because it was inequitable. Cf. § 3439.*11*.)

MADDEN, Judge (dissenting in part).

I concur in the opinion of the court except with regard to the item of $28,000 which the appellant took, on February 20, 1961, from the cash on hand of the bankrupt. The appellant's explanation for the taking is that it was done to "protect" bona fide creditors of Pomona from a threatened "improper" attachment by Dadigan, his joint venturer in Pomona, who had, by that time, disassociated himself from the market enterprise. The trustee says that the taking was in violation of the California Uniform Fraudulent Conveyance Act, Cal. Civ.Code § 3439.07, which says:

> Every conveyance made and every obligation incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

The appellant urges that he "returned" $22,000 of the $28,000 within three days of the taking and the remaining $6,000 within 11 days of the taking and that all of the $28,000 was used to pay "bona fide general creditors" of Pomona, and that, therefore, the California Civil Code provision was not applicable. He says that if he is obliged to pay the $28,000 to the trustee, as ordered by the district court, he will have paid it twice, and both times to creditors of Pomona. In a sense that is true. But, as the opinion of the court says, the philosophy of the bankruptcy law is that such assets as an insolvent has are to be devoted, so far as they extend, to the pro rata payment of the insolvent's creditors. It would be a complete contradiction of that philosophy to allow the principal responsible actor in a corporation to gather up such ready money as the corporation has and use it to pay such of the creditors as he chooses, because he thinks they are more deserving or for some other reason. As the court says in its discussion of appellant's collection and distribution of the rent money, the use of some of the insolvent's assets to pay some of the creditors does benefit the other creditors by some small amount not susceptible of calculation or of being credited to the one making such payments.

There is an earnest argument by the appellant that $8,000 or more of the $28,000 taken and returned by appellant was used to pay creditors who, in the bankruptcy, would have been entitled to payment in full if the assets were sufficient, before any payment would be made to general creditors. It seems that the market held itself out to accept cash from its customers and use it to pay the customers' gas and electric bills for them. The market also issued travelers checks to its customers, which the customers of course paid it for, in cash. The store manager, as we have said, testified about the use of the money returned by the appellant to satisfy such obligations. But his testimony as to the amount so used was undocumented and indefinite. Furthermore, there was no evidence that the deposits for these purposes by customers were held in a trust account. Nor is there any citation by the appellant of any legal doctrine which would give a preferred status to persons in the situation of these customers of the bankrupt market.

The district court, applying Bankruptcy Act, § 57n, 11 U.S.Code § 93n, provided in its order that, as to the $20,000 item of the checks, if the appellant paid back the $20,000 within 30 days after the rendition of the order to pay it back, the appellant might then file a general claim for that amount in the bankruptcy proceedings. The appellant urges that if the district court's order to pay back the $28,000 item is affirmed by this court, this court should direct that a general claim for that amount should be permitted to be filed. I think not. If one wrongfully takes the money of another, and, in litigation, is required to pay it back, there is no basis for any claim in bankruptcy or otherwise for the amount which he paid back. Nor would the fact that he had paid an equiv-

alent amount to others to whom it did not belong give rise to a claim against the bankrupt estate.

I would affirm, in its entirety, the order of the district court.