Filed 12/31/20

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SEDA GALSTIAN AGHAIAN, Individually and as Trustee, etc., et al., <br><br>    Plaintiffs and Appellants, <br><br>      v. <br><br> ALICE MINASSIAN et al. <br><br>    Defendants and Respondents. | B300726 <br><br> (Los Angeles County Super. Ct. No. LC107510) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge. Reversed.

Kinsella Weitzman Iser Kump & Aldisert, Gregory J. Aldisert, David W. Swift; Aldisert Law and Gregory J. Aldisert for Plaintiffs and Appellants Seda Galstian Aghaian and Aida Galstian Norhadian, Individually and as Trustees, etc.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Caroline E. Chan; and Robert Craig Woodbury for Defendant and Respondent Alice Minassian.

Law Offices of Lee David Lubin and Lee David Lubin for Defendant and Respondent Shahen Minassian.

Arthur Minassian, in pro. per., for Defendant and Respondent Arthur Minassian.

Seda Galstian Aghaian and Aida Galstian Norhadian, Individually and as Trustees of The Galstian Trust II U/A/D October 26, 1982, as amended and restated July 1, 2005 (plaintiffs) sued Alice Minassian (Alice), Shahen Minassian (Shahen) and Arthur Minassian (Arthur), asserting four causes of action arising out of alleged fraudulent transfers.[1] The court sustained defendants' demurrers to two causes of action and plaintiffs voluntarily dismissed the remaining causes of action. After the court entered a judgment of dismissal, plaintiffs appealed. We reverse.

## FACTUAL SUMMARY[2]

Plaintiffs are trustees and beneficiaries of a trust established in 1982 by their now deceased parents. In 2013 they sued Shahen based on actions Shahen took beginning in 1996 pertaining to trust properties located in Iran (the underlying action).[3] Plaintiffs sought $105 million in damages.

On March 2, 2016, Arthur—Shahen's son and an attorney—applied ex parte to have the court appoint him as Shahen's guardian ad litem in the underlying action. According

---

[1] To avoid confusion, we will refer at times to the defendants by their first names. We intend no disrespect.

[2] In accordance with our standard of review, our factual summary assumes the truth of the operative complaint's properly pleaded factual allegations (*Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 1237, 1242, fn. 1) and matters that have been judicially noticed (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6).

[3] Plaintiffs' brother, Andranik Galstian, was also a trustee and beneficiary under the trust and a plaintiff in the underlying action. He passed away while that action was pending.

2

to his application, Shahen was "unable to comprehend the nature of the proceedings of [the underlying action] and [could not], therefore, adequately assist his counsel in the defense of [the underlying] action." The court granted the application.

Shahen and Alice were married in 1964 and have since lived together continuously. In 2004 they purchased their Sherman Oaks residence (the residence), taking title together in their names as "Husband and Wife as Joint Tenants." In 2008 they purchased property across the street from their residence (the second property), taking title in the same manner. Arthur lived in the second property.

While the underlying action was pending, Arthur, Shahen, and Alice "concocted" a "scheme . . . to hinder, delay or defraud Shahen's creditors, particularly [p]laintiffs, by putting the two houses . . . into Alice's name only, and thereby making it more difficult for [p]laintiffs to levy on them." In furtherance of this scheme, Alice filed a petition for the dissolution of her marriage on September 26, 2016.

According to the dissolution petition, Shahen and Alice separated on April 1, 1991—a date that preceded the events that gave rise to the underlying action. About three weeks after Alice filed the petition, the family court granted Arthur's application to be appointed Shahen's guardian ad litem in the dissolution proceeding.

Notwithstanding the dissolution proceeding and ostensible separation, Shahen and Alice continued to live together and hold themselves out as husband and wife. In January 2017, Shahen and Alice obtained a reverse mortgage on their residence in the amount of $938,250.

3

In June 2017, Arthur, as Shahen's guardian ad litem, and Alice stipulated to a division of property in the dissolution proceeding that allocated the two Sherman Oaks properties to Alice; Shahen assumed the entire obligation to pay any judgment against him in the underlying action. On June 27, 2017, the family court entered a judgment in accordance with the stipulation.

On August 24, 2017, Arthur, acting as Shahen's "attorney-in-fact," executed quitclaim deeds to Alice of Shahen's interest in their two Sherman Oaks properties, including their residence. Shahen, however, "retained control of the two properties."

On September 6, 2017, a bench trial in the underlying action began, and lasted six weeks. Shahen participated in the trial, including testifying during 12 days of the trial, without showing signs of diminished mental capacity.

On September 21, 2017, Arthur's quitclaim deeds to the Sherman Oaks properties were recorded.

On June 12, 2018—after the trial in the underlying action had concluded and before the court issued its statement of decision—Alice sold the second Sherman Oaks property to a third party for $970,000, with net proceeds to Alice of at least $500,000. Three days later, Alice used the proceeds from the sale to purchase, in her and Arthur's name, a condominium in Sherman Oaks for $389,500 in an "all-cash transaction." Arthur thereafter lived in the condominium. In August 2018, Arthur deeded his interest in the condominium to Alice.

In November 2018, the court issued its final statement of decision in the underlying action, awarding plaintiffs

$34,506,989.[4]  The following month, the court entered judgment for plaintiffs in that amount.

Shahen and Alice continue to live together in the Sherman Oaks residence they bought in 2004.  Indeed, they never actually separated.

## PROCEDURAL HISTORY

Plaintiffs commenced this action by filing a complaint in July 2018.  They filed the operative first amended complaint in December 2018.  They alleged causes of action for fraudulent transfer (against Shahen and Alice) under Civil Code section 3439.04, subdivision (a)(1)[5], constructive fraudulent transfer (against Shahen and Alice) under section 3439.04, subdivision (a)(2), aiding and abetting fraudulent transfer (against Arthur), and constructive trust (against Alice).

Plaintiffs alleged the facts we summarized above and further alleged:  The divorce between Shahen and Alice is a "complete sham"; plaintiffs are creditors within the meaning of California's enactment of the Uniform Voidable Transactions Act (UVTA) (section 3439 et seq.); and Shahen, in making the alleged transfers, acted with " 'an actual intent to hinder, delay

---

[4] According to the final statement of decision, the trial was closed to evidence on October 12, 2017.  Closing arguments were heard in November and December 2017.  The court thereafter reopened the matter for briefing and argument on specified issues, which was heard in March 2018, and the matter submitted at that time.

[5] Subsequent unspecified statutory references are to the Civil Code.

or defraud any creditor of the debtor,' " for purposes of the UVTA (see § 3439.04, subd. (a)(1)).

The cause of action against Arthur incorporated all the foregoing allegations and added that "Arthur concocted the entire scheme (along with his parents Shahen and Alice) to hinder, delay or defraud Shahen's creditors, particularly [p]laintiffs, by putting the two houses [in Sherman Oaks]— which were community property assets of Shahen and Alice— into Alice's name only, and thereby making it more difficult for [p]laintiffs to levy on them." Arthur also "devised the 'divorce strategy' and came up with the date of separation . . . so as to create an argument that the judgment in the [u]nderlying [a]ction was Shahen's separate property debt."

Shahen, Alice, and Arthur filed separate demurrers on the grounds that the alleged causes of action asserted against them failed to state a cause of action. They supported the demurrers with requests for judicial notice of, among other documents, the judgment in the marital dissolution petition and the orders appointing Arthur guardian ad litem for Shahen in the underlying action and in the marital dissolution proceeding.[6]

The court sustained the demurrers as to the first cause of action for fraudulent conveyance without leave to amend because Arthur made the challenged transfer as Shahen's guardian ad litem "under the supervision of the family court." Plaintiffs, therefore, "will not be able to demonstrate that transfer was made by Shahen with intent to defraud."

_____

[6] It does not appear from our record that the court expressly granted the requests for judicial notice. The court's references to the orders and judgment in its ruling on the demurrers, however, imply that the requests were granted.

6

The plaintiffs' inability to establish Shahen's fraudulent intent also defeated the third cause of action against Arthur for aiding and abetting fraudulent transfer. In addition, the court explained, "Arthur enjoys judicial immunity for his acts as guardian ad litem . . . [and,] [e]ven if . . . the applications for [guardian ad litem] and the filing of the dissolution actions were a sham, those acts are protected by the litigation privilege under [section] 47."

The court overruled the demurrers to the second and fourth causes of action. Plaintiffs subsequently dismissed these causes of action without prejudice. The court thereafter entered a judgment of dismissal, and plaintiffs timely appealed.[7]

## DISCUSSION

### A. *Fraudulent Transfer*

In their first cause of action, plaintiffs seek relief on the ground that Shahen's transfers of the Sherman Oaks properties constitute voidable transfers under section 3439.04, subdivision (a)(1).[8] Under that statute, a transfer of property

---

[7] After the court entered the judgment of dismissal, Alice filed a motion to expunge a lis pendens plaintiffs filed against the Sherman Oaks residence and the condominium purchased with the proceeds from the second property. The court denied the motion, explaining that it would maintain the status quo because "there is a real probability that [its ruling sustaining the defendants' demurrers] will be reversed."

[8] In 2015 the Legislature amended what had previously been known as the Uniform Fraudulent Transfer Act (UFTA). (Stats. 2015, ch. 44, §§ 1–16, pp. 1452–1458.) The amendment went into effect in January 2016. Among other changes, the

7

by a debtor is voidable if the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." (§ 3439.04, subd. (a)(1); see *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1020 [a fraudulent transfer cause of action "does not require proof of anything more than actual intent to defraud"].)[9]

"The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt." (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 817 (*Chen*).) In furtherance of the state's "general policy of protecting creditors from fraudulent transfers, including transfers between spouses," the UVTA applies to property transfers made pursuant to a marital settlement agreement incorporated into a judgment of dissolution. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 668.)

---

Legislature replaced the word "fraudulent" with "voidable" and specified certain burdens of proof. (*Id.*, §§ 1–3, p. 1453, §§ 6–7, pp. 1454–1455, § 10, pp. 1456–1457.) The enactment did not alter the essential elements of a cause of action for a fraudulent or voidable transfer. Thus, for purposes of analyzing the sufficiency of the pleading, we may rely on opinions addressing the UFTA. (See § 3439.14, subd. (d) [provisions in the UVTA that "are substantially the same as the provisions" under the UFTA are to "be construed as restatements and continuations" of the former law].)

[9] A creditor is defined in the UVTA as "a person that has a claim." (§ 3439.01, subd. (c).) A claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (§ 3439.01, subd. (b).) A "debt" is "liability on a claim"; and a "debtor" is "a person that is liable on a claim." (§ 3439.01, subds. (d) & (e).)

8

Whether a debtor had the actual intent to hinder, delay, or defraud a creditor is a question of fact. (*Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 40; *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1294.) Among other so-called "badges of fraud" indicating such intent (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 834), the fact finder may consider whether: (1) the debtor made the transfer to an "insider"; (2) the debtor retained possession or control of the property after the transfer; (3) the debtor had been sued before making the transfer; (4) the debtor removed or concealed assets; (5) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; and (6) the transfer occurred shortly before or shortly after a substantial debt was incurred. (§ 3439.04, subd. (b).) None of these factors is determinative, and no minimum or maximum number of factors is required. (*Filip v. Bucurenciu*, *supra*, 129 Cal.App.4th at p. 834; *In re Ezra* (Bankr. 9th Cir. 2015) 537 B.R. 924, 931.)

Here, the plaintiffs pleaded facts sufficient to constitute a cause of action under section 3439.04, subdivision (a)(1). They alleged that Shahen made the subject transfers with " 'an actual intent to hinder, delay or defraud any creditor of the debtor,' " within the meaning of the UVTA, and alleged with particularity the existence of several badges of fraud: Shahen made the transfers to an "insider," namely, his wife Alice and his son Arthur; he "retained control of the two properties after the transfers"; the plaintiffs had sued Shahen before he made the transfers; and Shahen "did not receive reasonabl[y] equivalent value from Alice for his transfer of the two properties."

9

Defendants contend that plaintiffs have failed to state a cause of action because Shahen received from Alice reasonably equivalent value in exchange for the transferred properties. They rely on the terms of the settlement in the dissolution proceeding, which provides that Shahen will receive (1) the "net sale[ ] proceeds" (in an unspecified amount) from the sale of the couple's apartment in Nice, France, (2) an apartment (of unspecified value) in Tehran, Iran, (3) an apartment in "Papazian" (in an unidentified country and of unspecified value); (4) the right to certain tax credits, (5) one-half of certain bank accounts (with unspecified balances); and (6) 80 percent of "all income received by [Shahen] from Iran," which "is estimated to be approximately $5,600,000." Defendants therefore conclude that Shahen "obviously received a reasonably equivalent value in exchange for the Sherman Oaks properties given to Alice."

As plaintiffs point out, to state a cause of action for fraudulent transfer under section 3439.04, subdivision (a)(1), they are not required to allege that Shahen failed to receive a reasonably equivalent value for the properties he transferred; it is sufficient to allege that the defendant made the transfer "with 'actual intent to hinder, delay, or defraud any creditor of the debtor.'" (*Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1401.)[10]

---

[10] A defendant's failure to receive reasonably equivalent value is an element of establishing a violation of the UVTA by *constructive* fraud. (§ 3439.04, subd. (a)(2); *Optional Capital, Inc. v. DAS Corp., supra,* 222 Cal.App.4th at p. 1401.) It is also one of the badges of fraud for purposes of establishing a defendant's intent under section 3439.04, subdivision (a)(1). (§ 3439.04, subd. (b)(8).) But it is not an element of a cause of action based

Defendants further contend that the litigation privilege, codified in section 47, subdivision (b), bars plaintiffs' cause of action because "most of" Alice's and Shahen's actions "were conducted in the course of a judicial proceeding." We disagree.

The litigation privilege " 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) "Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Id.* at p. 1058.)

Defendants point to Alice's "filing and prosecution of the divorce action," to what Shahen "said and did in the litigation of the divorce action," and to "the filing of the petitions for appointment of a guardian ad litem for [Shahan]." These actions, they argue, "were all communications made during the course of judicial proceedings," and they are therefore "insulated from liability arising from the plaintiffs' allegations that the divorce

on actual fraud. (*Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071; *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 122–123.)

11

was a sham or that the appointments of a guardian ad litem was improper."  We reject these arguments.

*Chen*, *supra*, 33 Cal.App.5th 811 is instructive.  In that case, Shazad owed a judgment debt to Chen.  (*Id*. at p. 815.)  Shazad and his brother Sharmad agreed that Sharmad would file a lawsuit against Shazad and obtain a judgment against him.  (*Ibid*.)  Sharmad filed the sham lawsuit and the brothers stipulated to a judgment.  Sharmad then executed upon Shazad's property, thereby defeating Chen's efforts to enforce his judgment against Shazad.  (*Id*. at p. 816.)  When Chen sued Shazad and Sharmad under the UVTA, the brothers argued that Chen's action was barred by the litigation privilege.  The Court of Appeal disagreed, and explained:  "Under the UVTA, it is the *transfer* made or the obligation incurred by the debtor which, when made with the requisite intent or without sufficient consideration, is wrongful and, therefore, voidable.  [Citation.]  Thus, the acts causing injury to Chen were the agreement to defraud him and the transfer of the [property] from Shazad to Sharmad by means of executing on [Sharmad's] judgment.  The acts of filing the sham complaint and agreeing to the stipulated judgment, though communicative in nature, were not the gravamen of Chen's fraudulent transfer cause of action. . . . [Sharmad's] levy was the allegedly voidable transfer producing the injury and was, therefore, the gravamen of the cause of action for fraudulent conveyance."  (*Id*. at p. 821.)

The *Chen* court also explained that its conclusion was consistent with the purposes of the litigation privilege and the UVTA.  "The litigation privilege's purposes are ' "to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony," ' and 'to promote

12

effective judicial proceedings by encouraging full communication.' [Citation.] Thus, the privilege does not extend to noncommunicative conduct that is not of necessity related to communicative conduct. Levying on property as part of a scheme to defeat a creditor's rights in violation of the UVTA is not communicative conduct; therefore, extending the litigation privilege to such conduct advances none of the privilege's purposes. [¶] The UVTA serves the valuable purpose of protecting creditors from schemes to place assets beyond their reach." (*Chen, supra*, 33 Cal.App.5th at pp. 821–822.) The court concluded that if it extended the litigation privilege to the facts alleged by Chen, it "would be providing a road map to circumventing the UVTA and defeating the rights of creditors." (*Id*. at p. 822.)

The sham lawsuit and stipulated judgment in *Chen* are analogous to the alleged sham dissolution proceeding and stipulated judgment perpetrated in this case. Just as Shazad and Sharmad used the judgment in *Chen* and enforcement procedures as a means for transferring Shazad's property to Sharmad, in the instant case Shahen and Alice (with Arthur's aid) used the dissolution judgment to authorize and justify Shahen's transfer of the Sherman Oaks properties to Alice. As in *Chen*, it is the transfer of the property, not the sham judicial proceedings used to provide legal cover for the transfer, that constitutes the gravamen of the action. Shahen's transfer of the Sherman Oaks properties, like the transfer of Shazad's property to Sharmad, is not protected by the litigation privilege.

13

**B.** *Third Cause of Action Against Arthur for Aiding and Abetting Shahen's Fraudulent Transfer*

Plaintiffs' third cause of action is asserted against Arthur based on allegations that he aided and abetted Shahen's fraudulent transfer of the Sherman Oaks properties. (See *Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1025 [California law recognizes liability for aiding and abetting a fraudulent transfer]; *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 706 ["a debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages"].) In particular, plaintiffs alleged that Arthur "provided substantial assistance to Shahen and Alice in order to hinder, delay and defraud Shahen's creditors, including [p]laintiffs. Among other things, Arthur orchestrated the 'divorce strategy' which he knew was a sham, and then signed the quitclaim deeds as Shahen's 'attorney-in-fact' to transfer title of the [Sherman Oaks properties] to Alice. Arthur knew of the fraudulent transfers given his knowledge and participation in the [u]nderlying [a]ction, and provided substantial assistance to the fraudulent transfer scheme." These allegations are sufficient to state a cause of action for aiding and abetting a fraudulent transfer. (See *Taylor v. S & M Lamp Co., supra*, at pp. 705–706.)

Defendants argue that the action against Arthur is barred because he has immunity for actions he took as Shahen's guardian ad litem. Plaintiffs do not dispute that a guardian ad litem has immunity from liability for "acts within the scope of the guardian's authority" (*McClintock v. West* (2013) 219 Cal.App.4th 540, 552), but argue that Arthur's appointment in the marriage dissolution action as Shahen's guardian ad litem "is

14

not a get-out-of-jail-free card that provides blanket quasi-judicial immunity" for his conduct in this case.  We agree.

Plaintiffs did not sue Arthur because of actions he took as Shahen's guardian ad litem; they sued him because he "concocted the entire scheme (along with his parents Shahen and Alice)," including "the 'divorce strategy,' " "to hinder, delay or defraud Shahen's creditors, particularly [p]laintiffs, by putting the [Sherman Oaks properties] . . . into Alice's name only."  He fulfilled the scheme by executing the challenged quitclaim deeds as Shahen's attorney-in-fact.  Arthur's actions to become and act as Shahen's guardian ad litem in the dissolution proceedings may have facilitated the scheme he concocted, but they are merely incidental to it.  Stated differently, his involvement in "concoct[ing]" and "orchestrat[ing]" a "sham" divorce proceeding with the intent to "hinder, delay or defraud Shahen's creditors" occurred outside the scope of the authority he had as Shahen's guardian ad litem.  He is not, therefore, entitled to immunity for that involvement.

We also reject Arthur's argument that he is protected by the litigation privilege for the reasons expressed above.

Arthur further contends that plaintiffs failed to comply with the pre-filing requirements under section 1714.10.  That section provides:  "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable

15

probability that the party will prevail in the action." (§ 1714.10, subd. (a).)

"[S]ection 1714.10 was enacted to combat 'the use of frivolous conspiracy claims that were brought as a tactical ploy against attorneys and their clients and that were designed to disrupt the attorney-client relationship. [Citations.]' [Citation.]" (*Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327, 329.) When it applies, "the plaintiff must make a prima facie showing [of a reasonable probability of prevailing] before being allowed to assert the claim." (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1350.)

Plaintiffs acknowledge in their first amended complaint that Arthur is an attorney, but allege that he "was not functioning as [Shahen's] lawyer in engaging in" his wrongful conduct "because Arthur signed the quitclaim deeds for the [Sherman Oaks properties] . . . as Shahen's 'attorney in fact,' and not his attorney at all [*sic*]."[11] The allegation is consistent with court documents filed in the underlying action and the dissolution action showing that Shahen was represented by attorneys other than Arthur. Because plaintiffs have not alleged an attorney-client relationship between Shahen and Arthur, section 1714.10 does not apply.

Furthermore, under section 1714.10, subdivision (c), even if plaintiffs had alleged an attorney-client conspiracy, the pre-filing requirement does not apply when the "[attorney's] acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of

---

[11] The plaintiffs' reference to "attorney at all" is probably a typographical error; plaintiffs probably meant "attorney at law."

16

the attorney's financial gain." (§ 1714.10, subd. (c).) Here, plaintiffs alleged that "Arthur acted for his own personal financial gain because he lived at the [second] property and acted to prevent that property from being levied upon by arranging the quitclaim deed from Shahen to Alice. After that property was sold, Arthur arranged the purchase of the [c]ondominium (where Arthur now resides) with the proceeds from the sale of [the second property], and acted to prevent the [c]ondominium from being levied upon by first arranging for title to be held in his name and Alice's name and subsequently solely in Alice's name. Moreover, Arthur committed these acts in order to preserve these assets for his inheritance, and for this additional reason, Arthur acted to further his personal financial gain." These allegations, which we must assume are true for purposes of demurrer, are sufficient to satisfy the exception to the pre-filing requirement under section 1714.10, subdivision (c).

Lastly, Arthur makes a cursory argument that he cannot be liable for aiding and abetting Shahen's wrongful conduct "because he was a disclosed agent." He relies on *Lippert v. Bailey* (1966) 241 Cal.App.2d 376 for the proposition that "[w]here the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent." (*Id.* at p. 382.) The rule is a principle of agency law that applies when one enters into a contract with the agent of a principal; when the agent has actual or apparent authority to make the contract on behalf of the principal, the principal, and not the agent, is bound. (3 Witkin, Summary of Cal. Law (11th ed. 2017) Agency & Employment, § 209, p. 271; Rest.3d Agency, § 6.01.) Here, plaintiffs' cause of action does not arise from a contract with

17

either Shahen or Arthur.  The disclosed agent rule has no application here.

## DISPOSITION

The judgment is reversed.  The court shall vacate its order sustaining the defendants' demurrers and enter a new order overruling the demurrers.

Appellants are awarded their costs on appeal.
<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.