[No. A129047. First Dist., Div. Five. June 28, 2011.]

PHILLIPS, SPALLAS & ANGSTADT, LLP, et al., Plaintiffs and Respondents, v.
SHAHAB E. FOTOUHI et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, the opinion is certified for publication with the exception of part III.B. and C.3.

COUNSEL

Ellis, LaVoie, Poirier, Steinheimer & McGee, Mark E. Ellis, Daniel D. McGee and Brandon L. Reeves for Defendants and Appellants.

Law Offices of Michael A. Papuc and Michael A. Papuc for Plaintiffs and Respondents.

OPINION

**BRUINIERS, J.**—A law firm obtained a $2.4 million judgment against one of its former partners, defendant Shahab E. Fotouhi, and, in an effort to collect the judgment, sought court orders (1) charging Fotouhi's interest in his new law firm, Fotouhi, Epps, Hillger & Gilroy, LLP (the Partnership) (Code Civ. Proc., § 708.310; Corp. Code, § 16504, subd. (a)); (2) extending the order charging his partnership interest to a corporation it contends is a "mere continuation" of the Partnership formed "to frustrate attempts to collect on the judgment . . . ," Fotouhi, Epps, Hillger & Gilroy, P.C. (the Corporation); and (3) adding both the Partnership and the Corporation to the judgment against Fotouhi as his alter egos. The superior court issued a charging order against both the Partnership and the Corporation, directing each to pay 15 percent of its monthly net revenues toward the judgment until it is satisfied. The superior court declined to find the Partnership and the Corporation to be Fotouhi's alter egos.

Fotouhi, the Partnership, and the Corporation (collectively, defendants) appeal. They contend the court erred in (1) issuing a charging order against a corporation; (2) relying on a "mere continuation" analysis; (3) levying on corporate assets to satisfy a judgment against a shareholder; and (4) violating the due process rights of the Partnership and the Corporation. We reject these contentions and affirm the judgment.

## I.   FACTUAL BACKGROUND

In November 2000, Fotouhi entered into a partnership agreement with Phillips, Spallas & Fotouhi, LLP (the Phillips firm). In March 2004, Fotouhi announced he was leaving the firm, effective April 1, 2004, and taking two major insurance clients with him (insurance clients).

Fotouhi started a new law practice, with three of the Phillips firm's former associates, Darren Epps, Wendy Hillger, and Michael Gilroy. Fotouhi, Epps, Hillger & Gilroy, LLP, registered as a limited liability partnership on March 25, 2004. As the general partner, managing partner, and president of the Partnership, Fotouhi held a "dominant position in the firm," and controlled the firm's books and records. He generated between 75 and 90 percent of the work.

In May 2004, the Phillips firm's successor in interest, Phillips, Spallas, & Angstadt, LLP, and two of its named partners, Robert K. Phillips and Gregory L. Spallas (collectively, plaintiffs), asserted claims against Fotouhi for violating the partnership agreement and filed a petition in the superior court to compel arbitration. On May 17, 2005, an arbitration panel awarded plaintiffs liquidated damages of $2.4 million, finding Fotouhi had breached the partnership agreement by failing to give proper notice of his withdrawal, and continuing to perform work for and referring work from the insurance clients (arbitration award). Fotouhi vowed plaintiffs would " 'never get a dime out of him.' "

A week later, Fotouhi met with a bankruptcy attorney and, on August 29, 2005, filed a petition for chapter 7 bankruptcy. In December 2007, the bankruptcy court entered a judgment denying him discharge, finding he had made false oaths in his bankruptcy schedules and statement of financial affairs. The bankruptcy court found he "was motivated by his expressed intention to deprive his former partners of any recovery on their massive judgment against him, and to mislead all parties as to the value of his interest in [the Partnership] as well as other assets" and that, by leaving virtually no paper trail, Fotouhi maximized "his ability to obfuscate the extent and nature of his property and business dealings."

The bankruptcy trustee filed a proceeding to recover referral fees Fotouhi did not report in his bankruptcy papers, and the bankruptcy court entered a $53,666.43 judgment against Fotouhi on November 18, 2008.

Less than a month later, on December 12, 2008, "Fotouhi, Epps, Hillger & Gilroy, Inc.,"[1] filed articles of incorporation. The Corporation issued 1,000 shares of stock on December 17, 2008. The majority shareholders were Ryan Mau, who had not been a partner of the Partnership, and Hillger, with 350 shares each. Epps, Gilroy, and Fotouhi were issued 100 shares each. Mau and the partners of the Partnership became the directors and officers of the Corporation. Fotouhi was secretary of the Corporation, which registered with the California State Bar in January 2009.

The Partnership continued operating as a law practice.

The bankruptcy trustee pursued a claim for valuation of Fotouhi's interest in the Partnership as an asset of the bankruptcy estate. The bankruptcy court found Fotouhi had a 38.59 percent interest in the Partnership and valued this interest at more than $546,000 as of the filing of the bankruptcy petition. On May 10, 2009, the bankruptcy court entered judgment against the Partnership for $546,440.18.

Shortly after the May 2009 bankruptcy judgment was entered, the Partnership began doing business as "Fotouhi, Epps, Hillger & Gilroy, P.C." The Corporation took over the Partnership's office lease and continued to operate in the same location. The Corporation filed substitutions of counsel for the Partnership's clients in pending cases, and vendor accounts were changed to the Corporation's name. The Partnership's Web site became the Corporation's Web site, and the firm's name was changed on the letterhead and signage to reflect that it was now a professional corporation (P.C.) rather than a limited liability partnership (LLP). On June 1, 2009, the Corporation adopted bylaws, a shareholder agreement was executed, and the partners of the Partnership signed a bill of sale/asset purchase agreement transferring "certain real property" and personal property to the Corporation. The bill of sale does not identify the property or specify the consideration paid for these assets. Fotouhi states in a declaration that the "buy-sell agreement" provided for the Corporation's purchase of the Partnership's computers and equipment over a 12-month period at $3,000 per month. He maintains that no accounts receivable or work in progress carried over from the Partnership to the Corporation.

---

[1] Fotouhi, Epps, Hillger & Gilroy, Inc., and Fotouhi, Epps, Hillger & Gilroy, P.C., are the same business entity. We refer to them interchangeably as "the Corporation."

The Partnership's billable hours ended on May 31, 2009, and the Corporation's billable hours began on June 1, 2009.[2]

The superior court confirmed the arbitration award against Fotouhi and entered a $2.4 million judgment in plaintiffs' favor on June 17, 2009.

## II. Procedural History

*Plaintiffs' Motions*

On November 24, 2009, plaintiffs filed three motions in the superior court proceeding seeking to enforce the judgment. First, they moved for an order (1) charging Fotouhi's interest in the Partnership; (2) declaring his interest in the Partnership at 38.59 percent; (3) directing the Partnership to pay to them amounts due to Fotouhi until the judgment is satisfied; and (4) appointing a receiver to distribute 15 percent of the Partnership's gross revenue to them until the judgment is satisfied. Second, plaintiffs moved for an order (1) extending the charging order to the Corporation, as a continuation of the Partnership; (2) appointing a receiver over the Corporation; and (3) requiring payment of 15 percent of the Corporation's gross revenue to them until the judgment was satisfied. Third, plaintiffs moved to add both the Partnership and the Corporation as judgment debtors, contending they were Fotouhi's alter egos.

After the motions were fully briefed (with over 1,670 pages of supporting papers), they were taken off calendar by the court,[3] to be renoticed for hearing in the discovery department. Shortly thereafter, plaintiffs served a renotice of each motion, indicating the motions would "be based on the documents previously filed with this court for the [previously scheduled hearing date] which include this Re-Notice, the Memorandum of Points & Authorities, Declaration of [plaintiffs' counsel], Declaration of [plaintiff] Robert Phillips, Declaration of [attorney for the bankruptcy trustee], Index to Exhibits, Request for Judicial Notice, Opposition and Reply papers filed with the court, the file of this court, and upon such evidence and argument to be presented at the hearing of this matter. [¶] A true and correct copy of the documents previously filed by both parties for the [previously scheduled hearing date] will be provided to [this] Department."

---

[2] As of September 1, 2009, the Partnership remained in good standing with the California Secretary of State. The Partnership terminated its certificate of registration with the California State Bar on September 15, 2009.

[3] The motion had to be taken off calendar because, on the date of the originally scheduled hearing, plaintiffs filed a challenge to the commissioner scheduled to hear the matter (Code Civ. Proc., § 170.6).

*The Superior Court's Order*

On May 10, 2010, the superior court entered an order denying plaintiffs' motion to add alter egos as judgment debtors but granting the motions for a charging order against both the Partnership and the Corporation. The court found "[T]he law firm corporation is a continuation of the law firm partnership" and ordered each to pay 15 percent of its net income to plaintiffs, without any deduction from gross revenue for salary or other compensation to Fotouhi, including personal expenses, commencing with the first pay period after March 15, 2010.[4] In determining the firm's net revenue, regular salaries of the other shareholders/partners were to be deducted, but not further compensation or payments to these individuals. The court appointed an auditor at Fotouhi's expense.

Defendants filed a timely notice of appeal from the order.[5]

## III. Discussion

### A. *The Standard of Review*

We presume the superior court's order to be correct and indulge all intendments and presumptions to support it regarding matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] (*Denham*); accord, *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [122 Cal.Rptr.2d 167].) As the appealing parties, defendants have the burden to affirmatively show error. (*Denham*, at p. 564.)

"As to pure questions of law, such as procedural matters or interpretations of rules or statutes, we exercise our independent judgment. [Citations.]" (*Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 38 [87 Cal.Rptr.2d 541].) The application of a statute to undisputed facts also presents a question of law subject to de novo review. (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279].) To the extent our review requires consideration of the superior court's determination of disputed factual issues, we affirm these

---

[4] Defense counsel represented that the Corporation's directors and officers/employees received a minimum salary that was set when the Corporation was formed.

[5] An order granting a judgment creditor's motion for a charging order is appealable. (*Baum v. Baum* (1959) 51 Cal.2d 610, 613–615 [335 P.2d 481]; see also *Redevelopment Agency v. Goodman* (1975) 53 Cal.App.3d 424, 429 [125 Cal.Rptr. 818] [any order relating to the enforcement of a judgment is appealable]; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652 [25 Cal.Rptr.2d 109, 863 P.2d 179] [postjudgment order is appealable if it raises different issues than an appeal from the judgment and it affects the judgment or relates to it by enforcing it or staying its execution].)

findings if substantial evidence supports them. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

B.  *The Alleged Procedural Error**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C.  *The Alleged Substantive Errors*

  1.  *The Charging Orders.*

The superior court issued a charging order against the Partnership under Code of Civil Procedure section 708.310 (hereafter, section 708.310), and Corporations Code section 16504, subdivision (a) (hereafter, section 16504(a)). Section 708.310 provides: "If a money judgment is rendered against a partner or member but not against the partnership or limited liability company, the judgment debtor's interest in the partnership or limited liability company may be applied toward the satisfaction of the judgment by an order charging the judgment debtor's interest pursuant to [Corporations Code] Section 15673, 16504, or 17302 . . . ." Section 16504(a) provides: "On application by a judgment creditor of a partner or of a partner's transferee, a court having jurisdiction may charge the transferable interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor in respect of the partnership and make all other orders, directions, accounts, and inquiries the judgment debtor might have made or that the circumstances of the case may require." (See Corp. Code, § 16504, subd. (b) [charging order is "a lien on the judgment debtor's transferable interest in the partnership"]; *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 711 [12 Cal.Rptr. 323] (*Taylor*) ["the purpose of the lien of a charging order is to permit the judgment creditor to realize on his judgment . . . by appropriate supplementary proceedings or orders against [the debtor] partner's interest in the partnership"].)

  ■  Relying on principles of successor liability, the superior court applied its order to the Corporation as well, finding: "[T]he . . . [C]orporation is a continuation of the . . . [P]artnership." A corporation purchasing the principal assets of another corporation generally does not assume the seller's liabilities but will be held liable for these obligations if it is deemed " 'a mere continuation of the seller.' " (*Maloney v. American Pharmaceutical Co.* (1988) 207 Cal.App.3d 282, 287 [255 Cal.Rptr. 1] (*Maloney*), citing *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28 [136 Cal.Rptr. 574, 560 P.2d 3].) The

---

*See footnote, *ante*, page 1132.

extension of liability to the purchasing corporation in these circumstances is based on "the principle that '[i]f a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the' same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old. [Citations.]' [Citation.]" (*McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753 [107 Cal.Rptr.2d 702] (*McClellan*); see *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461 [67 P.2d 376] ["corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially . . . when actual fraud or the rights of creditors are involved . . . ."]; see 9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 16, p. 795 ["[t]he same approach has been used in cases where individuals incorporate, or where a corporation changes to a partnership"].)[11]

### 2. *The Superior Court Did Not Charge Fotouhi's Interest in the Corporation.*

Defendants challenge the superior court's order only to the extent it applies to the Corporation.[12] They contend the superior court erred in "charg[ing] the 'interest' of a corporate employee" because "charging orders are permissible only in the context of partnerships or limited liability companies." (Italics omitted.) Defendants misconstrue the superior court's order. The superior court's written order states only: "The motions for charging order against the law firm partnership and the law firm corporation are both granted," but these motions sought an "[o]rder charging the interest of Fotouhi in the [Partnership]," an order determining that the Corporation is a continuation of the Partnership, and an order determining that the charging order sought against the Partnership is applicable to the Corporation. Indeed, in announcing its

---

[11] The superior court found "more likely than not that the shift to a corporate structure was intended to avoid the liabilities [Fotouhi] would otherwise have had as a partner in a partnership." We observe that a purchasing corporation also is liable for its predecessor's obligations when " 'the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.' " (*Maloney, supra,* 207 Cal.App.3d at p. 287.)

[12] Defendants assert error regarding the charging order against the Partnership for the first time in their reply brief. They contend section 16504(a) only authorizes an order charging a judgment debtor's transferable interests and that Fotouhi's partnership interest is not transferable because of ethical restrictions on the sale of an interest in a law firm partnership. Defendants have waived this contention by failing to assert it in their opening brief, and we do not consider it. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 200, fn. 10 [10 Cal.Rptr.3d 154]; *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [81 Cal.Rptr.2d 639].) We note, however, that Corporations Code section 16502 provides: "The only transferable interest of a partner in the partnership is [his] share of the profits and losses of the partnership and [his] right to receive distributions. . . ."

ruling at the initial hearing on the motions, the superior court indicated: "Charging order will issue against Fotouhi's interest in the partnership and its continuation[,] the corporation . . . ." Thus, the superior court charged Fotouhi's partnership interest against the Corporation it deemed a "mere continuation" of that Partnership, effectively disregarding the distinction between the two. The record therefore demonstrates that, although the superior court applied the charging order to the Corporation, the interest charged was Fotouhi's interest in the Partnership.

■ We reject defendants' contentions that the superior court had no authority to issue such an order. Nothing in section 708.310 or section 16504(a) limits the entities against whom a charging order may be applied; these provisions relate only to the *interest* that may be charged. Moreover, section 16504(a) authorizes a court to issue a charging order and "make all other orders . . . that the circumstances of the case may require." Here, the superior court found that an order against the Corporation was required to enforce the judgment: "I have been presented with evidence that Mr. Fotouhi has not only declared his intent but taken substantial steps to avoid paying a debt that the courts have determined he . . . is owing. . . . [¶] . . . [¶] . . . Frankly, I think that [the] best reading [of defendants' arguments] . . . is that they are part of a continuing scheme to carry out [Fotouhi's] vow not to ever pay a dime." The superior court found that "the order with respect to the [P]artnership, in order to be properly enforced, needs also to run against the [C]orporation" and that "allowing the money to go to [Fotouhi] and not be paid against the judgment, or to go to his partners and then through a back door to him would be a miscarriage of justice." The superior court concluded: "[Defendants] have way overplayed their hands. They've created the situation now where something's going to be done, to make sure that Mr. Fotouhi doesn't get out from under this judgment without meeting his legal obligations, as best this court can do."

Substantial evidence in the record supports these findings. The record reflects that Fotouhi not only declared his intent not to pay the judgment, but that he filed for bankruptcy shortly after the arbitration award in an unsuccessful attempt to discharge the debt and maneuvered Partnership funds to conceal his assets, and that his partners assisted him in his efforts to avoid paying the judgment.[13]

■ Code of Civil Procedure section 187 (hereafter, section 187) provides further authority for the superior court's decision to apply the charging order

---

[13] The bankrupcty court noted evidence that "in preparation for his bankruptcy filing, [Fotouhi] devised an elaborate scheme to syphon off [the Partnership] money for the acquisition of . . . property and to free up the equity in his house," specifically, having his partners make large draws, which were used for the down payment and "kicked back to him."

to the Corporation. This provision affords trial courts "all the means necessary to carry [their jurisdiction] into effect," and courts may adopt "any suitable process or mode of proceeding . . . which may appear most conformable to the spirit of this Code" if the course of proceeding is not specifically pointed out. Section 187 "relates primarily to procedural matters, typically to control the court's own process, proceedings and orders, but also may relate to situations in which the rights and powers of the parties have been established by substantive law or court order but workable means by which those rights may be enforced or powers implemented have not been granted by statute. [Citations.]" (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1344 [46 Cal.Rptr.2d 516], italics omitted (*Topa*) [discussing concept of inherent judicial powers].) Given the diligence of Fotouhi and his colleagues in protecting his assets and his expressed intent to prevent plaintiffs from collecting "a dime," a charging order against the Partnership was unlikely to be effective in satisfying the judgment. Section 187 allowed the superior court to disregard the illusory distinction between the Corporation and the Partnership to give effect to its charging order. (See *McClellan, supra,* 89 Cal.App.4th at p. 754 [authority under § 187 to "disregard[] the corporate entity on any of several theories in order to add an additional judgment debtor"]; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 509 [121 Cal.Rptr.3d 118] ["[s]imply put, section 187 recognizes 'the inherent authority of a court to make its records speak the truth' "].)

Defendants argue that the superior court abused its discretion in relying on its powers under section 187. (See *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782 [83 Cal.Rptr.3d 95] [a trial court abuses its discretion when it acts on " 'a mistaken view about the scope of its discretion' "]; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 [33 Cal.Rptr.3d 644] [" '[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion . . .' "].) They maintain that section 187 does not apply in this case because extending the charging order to the Corporation was not necessary to effect enforcement of the judgment since an appropriate statutory process—wage garnishment—is otherwise available.

We are not persuaded by defendants' premise that the superior court could properly rely on its powers under section 187 only if no other means for enforcing the judgment were available. They cite no authority supporting this construction of the proviso making section 187 applicable: "if the course of proceeding be not specifically pointed out by this Code or the statute . . . ." The authority on which they rely suggests that the pivotal distinction in evaluating the exercise of a trial court's power under section 187 is whether the court adopted a "suitable process or mode of proceeding" in finding a "workable means" to enforce an established substantive right or, rather,

whether it did so in effectively legislating such a right in the first instance. (See *Topa, supra,* 39 Cal.App.4th at pp. 1344–1345 [court's inherent powers are "narrowly, and appropriately, confined to procedural innovations arguably essential to effective exercise of otherwise-granted jurisdiction or vindication of otherwise-established substantive rights or powers"].)

■ In this case, section 16504(a) afforded plaintiffs a right to an order charging Fotouhi's partnership interest. The superior court properly relied on section 187 to provide a practical means for enforcing that right. To the extent the proviso language in section 187 limits the court's authority in this regard, the question is whether the statutes provide a mechanism for enforcing plaintiff's right in these circumstances, not whether they provide another means of enforcing the judgment.[14]

3. *Defendants Have Not Shown Error in the Imposition of Successor Liability.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *The Court Did Not Use Corporate Assets to Satisfy a Shareholder's Debt.*

Defendants contend: "The court's order[,] which requires the [C]orporation to pay 15% of its collected fees over to [plaintiffs] until the judgment against Mr. Fotouhi, individually, is satisfied amounts to a levy of execution against corporate assets, violates the due process rights of both the [P]artnership and the [C]orporation, and is therefore improper." (Boldface & italics omitted.) Defendants contend that corporate assets are not available to satisfy a judgment against a shareholder and that "a 'charging order' which requires the firm to turn over a percentage of *its* profits clearly implicates the rights of non-judgment debtors, and in effect holds them responsible for paying the judgment [against Fotouhi]." (Boldface omitted.) We do not find these contentions persuasive.

First, the superior court's order is not a "levy" upon corporate assets to satisfy the judgment against Fotouhi.[18] The superior court properly charged

---

[14] Defendants contend the court's reliance on section 187 prevented Fotouhi from claiming exemptions available to a garnishee. They have not shown the court's order precluded such exemption claims, and to the extent it does, the basis for this complaint is that the court precluded defendants from using an illusory partnership/corporation distinction to shield Fotouhi's assets from the judgment.

*See footnote, *ante,* page 1132.

[18] Defendants misapply authority addressing the procedure for proceeding against a partner's interest in a partnership, which holds that a creditor may not use a levy of execution and must

Fotouhi's partnership interest against the Partnership and applied the order to the Corporation, deeming it legally responsible for the Partnership's liabilities. Thus, the court ordered the Corporation to satisfy the Partnership's obligation, not Fotouhi's. Moreover, the payments the court ordered the Corporation to make draw exclusively upon Fotouhi's share of Partnership profits and surplus. The superior court disregarded the corporate form and the illusory distinction between the Partnership and the Corporation, and the amounts due under its order represent his interest in the Partnership. (See *Hellman v. Anderson* (1991) 233 Cal.App.3d 840, 846 [284 Cal.Rptr. 830] [" 'partner's interest in the partnership is his share of the profits and surplus . . .' "].)[19]

▮ Defendants contend that the superior court's order amounts to improper "outside reverse piercing" of the corporate veil, relying on *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510 [77 Cal.Rptr.3d 96] (*Postal Instant Press*). We reject this contention. In *Postal Instant Press*, the court held that, although the corporate veil may be pierced to hold a shareholder liable for the debts or conduct of an alter ego corporation, a third party generally cannot pierce it to reach corporate assets to satisfy claims against a shareholder. (*Id.* at pp. 1518–1525.) As discussed above, the superior court in this case did not disregard the corporate form to satisfy claims against a shareholder but, rather, to hold it liable for the obligations of its predecessor, the Partnership.

Second, the court's order does not violate due process. Defendants argue that the superior court effectively added the Partnership and the Corporation to the judgment against Fotouhi even though they were not parties to that proceeding and are not his alter egos. We disagree. The superior court's order reaches only Fotouhi's share in the profits and surplus of the Partnership, not his partners' shares, so it does not hold the Partnership liable for the judgment against him. Furthermore, as discussed above, the superior court's order holds the Corporation liable for the Partnership's liabilities, not Fotouhi's.

---

move for a charging order. (See *Sherwood v. Jackson* (1932) 121 Cal.App. 354, 356 [8 P.2d 943]; *Baum v. Baum, supra,* 51 Cal.2d at p. 613; *Taylor, supra,* 190 Cal.App.2d at p. 710 [" '[c]harging orders on partnership interests have replaced levies of execution as the remedy for reaching such interests' "].)

[19] Fotouhi maintains he is a 10 percent shareholder in the Corporation, but the superior court could reasonably have rejected this claim in accordance with evidence that his share in the Partnership was 38.59 percent and its finding that the Corporation was formed to avoid his liabilities.

## IV. Disposition

The superior court's order is affirmed with costs to plaintiffs.

Jones, P. J., and Needham, J., concurred.