[No. E052072. Fourth Dist., Div. Two. June 14, 2012.]

ANAND L. DANIELL, Plaintiff and Appellant, v.
RIVERSIDE PARTNERS I, L.P., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

"Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C., D. and III.

1294

**COUNSEL**

Anand L. Daniell, in pro. per., for Plaintiff and Appellant.

Larry Rothman & Associates, Larry Rothman; Calder & Mello and Kevin H. Mello for Defendants and Respondents.

OPINION

**RICHLI, Acting P. J.**—Anand L. Daniell filed this action for malicious prosecution based on an unlawful detainer allegedly filed against him by the previous owner of his apartment complex and by the previous property manager. The defendants in this action include the alleged *current* owners and *current* property manager, who Daniell claims are liable as successors in interest.

The current owners and the current property manager brought special motions to strike (SLAPP motions) under Code of Civil Procedure section 425.16 (the SLAPP Act). The trial court granted the motions. It ruled that Daniell's cause of action arose out of the moving parties' exercise of their First Amendment rights, *even though* they did not prosecute the unlawful detainer. Moreover, it ruled that Daniell had failed to show a probability of prevailing against them, precisely *because* they did not prosecute the unlawful detainer.

Daniell appeals. He contends that the trial court erred by granting the SLAPP motions, because:

1. His malicious prosecution cause of action does not arise out of any protected activity by the current owners or the current property manager.

2. He showed a probability of prevailing on the merits, in that:

a. With respect to the previous owner and the previous property manager, he introduced evidence of malice, lack of probable cause, and favorable termination.

b. He also introduced evidence that the current owners and the current property manager are liable as the successors in interest to the previous owner and the previous property manager.

In the published portion of this opinion, we will uphold the rulings granting the SLAPP motions, essentially for the reasons stated by the trial court. First, Daniell's malicious prosecution claim is "[a] cause of action against *a person* arising from any act of *that person* in furtherance of *the person's* right of petition or free speech" (Code Civ. Proc., § 425.16, subd. (b)(1), italics added), even though these particular defendants did not prosecute the underlying unlawful detainer. Second, Daniell failed to show that these defendants could be held liable on a successor in interest theory.

In the unpublished portion of this opinion, we will reject Daniell's contention that the current property manager's SLAPP motion was never served on him. We will also reject his contention that the trial court erred by granting the current property manager's motion for relief from default.

Hence, we will affirm.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Complaint.*

In March 2009, Daniell filed this action for malicious prosecution against Riverside Partners I, L.P. (Riverside), Kayne Anderson Real Estate Partners I (Kayne) and Campus Apartments, L.L.C. (Campus) (collectively respondents), among others.

### B. *The First SLAPP Motion.*

In May 2010, Riverside and Kayne filed a SLAPP motion (first SLAPP motion). They argued, among other things, that filing an unlawful detainer is constitutionally protected speech or petition activity and that Daniell could not show a probability of prevailing against them because they did not acquire his apartment complex until after the unlawful detainer had already been filed and dismissed.

The following facts were either shown by the evidence introduced in connection with the first SLAPP motion[1] or (when specifically noted below) alleged in Daniell's complaint.

In 2005, Daniell leased an apartment in a complex on Iowa Avenue in Riverside. At the time, the complex was owned by an entity called GrandMarc[2] and managed by College Park Management, LLC (College Park).

---

[1] In opposition, Daniell submitted his own declaration, along with numerous exhibits. In the declaration, however, he purported to draw various speculative inferences and legal conclusions about matters of which he could not possibly have had personal knowledge. Such testimony simply does not constitute substantial evidence. (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1144 [69 Cal.Rptr.3d 445] [speculation]; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532, fn. 3 [65 Cal.Rptr.3d 205] [legal conclusions].) Accordingly, even though there was no objection to it, we cannot consider it.

[2] According to the lease, the name of the lessor was GrandMarc UCR, LLC. Thus, the unlawful detainer was filed in the name of GrandMarc UCR, LLC. According to Daniell, however, GrandMarc UCR, LLC had been dissolved; the true owner of the property was GrandMarc UCR, LP. Indeed, he argues that this is one of several reasons why the unlawful

In 2007, GrandMarc filed an unlawful detainer against Daniell. According to Daniell's complaint, the unlawful detainer was also filed "on behalf of" College Park. The unlawful detainer was retaliatory—it was filed in response to Daniell's complaints about the habitability of the complex. It was utterly meritless, and it caused damages to Daniell.

In response to the unlawful detainer, Daniell filed a demurrer and a motion to strike. Before they were even heard, the unlawful detainer was voluntarily dismissed. The attorneys who had filed it supposedly later admitted that they had dismissed it because it was meritless.

In 2008, Riverside purchased the apartment complex, assuming GrandMarc's loan. According to the complaint, Kayne is a general partner in Riverside and a co-owner of the complex. The complaint alleges that Daniell is suing Riverside and Kayne as GrandMarc's successors in interest, and he is suing Campus as College Park's successor in interest.

### C. *Campus's Motion for Relief from Default.*

Meanwhile, in June 2010, because Campus had not filed a timely answer or demurrer (or SLAPP motion), the trial court entered its default. In July 2010, Campus filed a motion to vacate the default.

### D. *The Trial Court's Rulings.*

In September 2010, the trial court granted Campus's motion to vacate. At the same hearing, it also granted the first SLAPP motion.[3]

### E. *The Second SLAPP Motion.*

Meanwhile, in September 2010, Campus filed its own SLAPP motion (the second SLAPP motion). However, it was essentially identical to the first SLAPP motion. In November 2010, the trial court granted this motion.

### II.

### THE SLAPP MOTIONS

Daniell contends that the trial court erred by granting the SLAPP motions.

---

detainer lacked probable cause. For purposes of this opinion, however, we can safely ignore any distinctions between the various GrandMarc entities.

[3] The first SLAPP motion was also filed on behalf of defendant Nadiyah Zarifa Shelton. The trial court denied the first SLAPP motion with respect to Shelton. Shelton is not a party to this appeal, and we are not called upon to review this ruling.

A. *Legal Background.*

The SLAPP Act states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)

 "The analysis of [a SLAPP] motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820 [124 Cal.Rptr.3d 256, 250 P.3d 1115].)

"We review an order granting or denying a motion to strike under section 425.16 de novo. [Citation.]" (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820.)

B. *A Cause of Action Arising from Protected Activity.*

 For purposes of the SLAPP Act, "every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding. [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215 [105 Cal.Rptr.3d 683].)

Daniell points out, however, that the underlying unlawful detainer was filed by GrandMarc and College Park; he is suing respondents as their successors in interest. Thus, he contends that his malicious prosecution cause of action does not arise out of any protected activity *by respondents.*

The SLAPP Act, by its terms, applies to "[a] cause of action against *a person* arising from any act of *that person* in furtherance of *the person's* right of petition or free speech . . . ." (Italics added.) (Code Civ. Proc., § 425.16, subd. (b)(1).) We have found very few cases construing this language.

In *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141 [106 Cal.Rptr.2d 843], the court stated, in dicta, that an attorney sued for acting on behalf of a client would not necessarily be "that person" within the meaning of the SLAPP Act. (*Shekhter*, at pp. 152–153.) In the case before it, however, it noted that the attorney defendants had been sued for communicating with the media and thus for exercising their own free speech rights. (*Id.* at p. 153.) It therefore declined to decide whether they could have brought a SLAPP motion if they had been sued solely for acting as counsel in litigation. (*Id.* at p. 154.)

Eventually, the Supreme Court resolved this particular issue in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 [39 Cal.Rptr.3d 516, 128 P.3d 713]; it held that an attorney who files or prosecutes a civil action on behalf of a client is engaged in "communicative conduct" so as to qualify for protection under the SLAPP Act. (*Rusheen*, at p. 1056.) Neither *Shekhter* nor *Rusheen*, however, sheds much light on whether the successor in interest to a speaker could invoke the SLAPP Act.

The only even tangentially relevant case that we have been able to find is *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8 [43 Cal.Rptr.2d 350] (Fourth Dist., Div. Two). There, Ludwig wanted to develop a discount mall near Barstow; he encouraged other individuals to file lawsuits and to appear at public meetings to challenge plans to build a competing discount mall. As a result, the City of Barstow sued him for interference with contract-ual relations, interference with prospective economic advantage, and unfair competition. (*Id.* at p. 12 & fn. 3.) The trial court denied Ludwig's SLAPP motion. (*Id.* at p. 11.)

When Ludwig filed a writ petition, Barstow argued, among other things, that he did not have standing under the SLAPP Act because he "did not, personally, perform any of the challenged acts." (*Ludwig v. Superior Court, supra*, 37 Cal.App.4th at pp. 16–17.) We disagreed. We explained: "It is well established that a statute open to more than one construction should be construed so as to avoid anomalous or absurd results. [Citation.] We assume the same principle applies to the Constitution. A person can exercise his own rights by supporting the forceful activities of others; it would be absurd to hold that the confident opponent who takes the public podium is protected, while the shy opponent who prefers to lend moral support by standing silently in the audience is not. [¶] . . . We see no meaningful difference between a person who supports and encourages the filing of a lawsuit, and one who supports and encourages a third party to speak out publicly on a matter of public interest." (*Id.* at p. 18.)

Barstow also argued that Ludwig was not being sued for engaging in any "communicative conduct." (*Ludwig v. Superior Court, supra*, 37 Cal.App.4th

at p. 18.) We rejected that argument, too, in part because "communicative conduct was . . . committed by [his] agents in speaking, writing, and making allegations in legal documents." (*Id.* at p. 20.)

■ While *Ludwig* is not, strictly speaking, on point, it does stand for the proposition that the SLAPP Act can be invoked by someone who did not personally engage in the protected communicative conduct. More generally, it indicates that the SLAPP Act should not be given an absurd construction.

■ Daniell argues that the trial court disregarded the plain meaning of the statute—particularly the words, "that person." In this context, however, "that person" is neither plain nor unambiguous. Artificial entities, such as corporations and limited partnerships, have First Amendment rights. (*Citizens United v. Federal Election Comm'n* (2010) 558 U.S. 310 [175 L.Ed.2d 753, 130 S.Ct. 876, 899–900].) Moreover, a corporation is a "person" for purposes of the SLAPP Act. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794].) Nevertheless, artificial entities are purely legal constructs. Thus, while it may be obvious that one human being is not the same person as another, whether one artificial entity is the same "person" as another for purposes of a given statute presents a more difficult question.

To put it a different way, what differences in corporate structure should suffice to make a corporation not "that person"? A change of name? A change of stockholders? A sale of corporate assets? We believe that this question can only be answered in light of the purposes of the SLAPP Act.

In the SLAPP Act itself, the Legislature declared that "it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process. *To this end, this section shall be construed broadly.*" (Code Civ. Proc., § 425.16, subd. (a), italics added.)

■ "The general rule of successor nonliability provides that where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the selling corporation's debts and liabilities. [Citation.]" (*Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1188 [116 Cal.Rptr.2d 310].) However, in *Ray v. Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3], the Supreme Court noted four exceptions to this rule: When "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability

for the seller's debts. [Citations.]" (*Id.* at p. 28.)[4] For purposes of the second prong of the SLAPP analysis—the probability of prevailing on the merits— Daniell argues that respondents fall under one of these exceptions.

Under at least three of these exceptions, however, the law contemplates a continuity of identity between the predecessor and the successor. For example, under the first exception, the successor not only purchases the assets of the predecessor, but also assumes its liabilities. Thus, in some sense, it becomes the predecessor. It may not have the same stockholders, officers, or employees; but then, even a single corporation's stockholders, officers, and employees may change over time. Similarly, under the second exception, the predecessor and the successor merge. This is the classic situation in which the predecessor and successor may be deemed the same "person."

Under the third exception, " '. . . California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations.' [Citation.]" (*Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 778 [25 Cal.Rptr.2d 438, 863 P.2d 683].) "The extension of liability to the purchasing corporation in these circumstances is based on 'the principle that "[i]f a corporation organizes another corporation with practically *the same shareholders and directors, transfers all the assets* but does not pay all the first corporation's debts, and *continues to carry on the same business, the separate entities may be disregarded* and the new corporation held liable for the obligations of the old. [Citations.]" [Citation.]' [Citations.]" (*Phillips, Spallas & Angstadt, LLP v. Fotouhi* (2011) 197 Cal.App.4th 1132, 1139–1140 [128 Cal.Rptr.3d 320], italics added, fn. omitted.)

Admittedly, the fourth exception, which presents a fraudulent conveyance scenario, is a bit different. In this instance, the law does not disregard the separate existence of the successor; rather, it disregards the conveyance. (Civ. Code, § 3439.07, subd. (a); *Mattern v. Carberry* (1960) 186 Cal.App.2d 570, 572 [9 Cal.Rptr. 137].) Thus, the successor is liable only to the extent of the assets fraudulently conveyed. It is not necessarily subject to *all* of the predecessor's liabilities. Daniell, however, does not rely on this exception, and there is no evidence of a fraudulent conveyance in this case.

A business that wishes to exercise its First Amendment rights may be protected by the SLAPP Act; nevertheless, from that business's point of view,

---

[4] The court went on to create a fifth exception, applicable solely in product liability cases. (*Ray v. Alad Corp., supra,* 19 Cal.3d at pp. 30–34.)

the knowledge that exercising those rights could subject a later buyer of its assets to a lawsuit—and moreover, that the buyer could not invoke the SLAPP Act to obtain a prompt dismissal of the lawsuit—could have a substantial chilling effect. Protecting only the business that engages in the speech, without protecting its successors in interest, falls short of the purpose that the SLAPP Act is designed to serve.

We therefore conclude that when an entity that has acquired the assets of another entity is sued under at least the first three exceptions in *Ray v. Alad Corp., supra,* 19 Cal.3d at page 28, and when the predecessor entity could have invoked the SLAPP Act, the successor entity can invoke the SLAPP Act, too.

We focus on the fact that this case involves artificial entities, because that is all that is necessary to decide the particular case that is before us. By adopting this narrow reasoning, we do not intend to prejudge the question of whether similar principles should apply to natural persons. Certainly we do not intend to preclude this possibility. Otherwise, we express no opinion on this question.

The trial court rejected Daniell's reasoning as "a bit too cute . . . ." It noted that, for purposes of the second prong of the SLAPP analysis, he was essentially arguing that Riverside and Kayne were the same entity as GrandMarc; however, for purposes of the first prong, he was trying to argue that they were distinct from GrandMarc. For the reasons already stated, we agree.

 We therefore conclude that the trial court properly found that Daniell's cause of action arose out of protected activity.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.

CAMPUS'S MOTION FOR RELIEF FROM DEFAULT*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1292.

## IV.

## DISPOSITION

The judgment and orders appealed from are affirmed. In the interests of justice, each side shall bear its own costs.

Miller, J., and Codrington, J., concurred.

A petition for a rehearing was denied July 11, 2012.