Filed 1/29/14  Altisource Solutions v. Quick Home Restore CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALTISOURCE SOLUTIONS, INC., | |
| Plaintiff and Respondent, | E055902 |
| v. | (Super.Ct.No. RIC1119073) |
| QUICK HOME RESTORE et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Paulette D. Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Zulu Ali for Defendants and Appellants.

Houser & Allison, Eric D. Houser, and Joshua D. Watts for Plaintiff and Respondent.

This action reaches us at a very rudimentary stage.  Plaintiff Altisource Solutions, Inc. (Altisource) filed a complaint accusing defendants of fraud and breach of contract.  Simultaneously, it applied for a right to attach order, which the trial court granted against

1

some defendants and denied against others. The facts are murky; there has been no discovery yet; and both sides have inexplicably failed to introduce evidence that one would have expected them to introduce.

It is not even clear how many appellants there are. The notice of appeal was filed on behalf of defendants Quick Home Restore (QHR) and S&H Global Trades, LLC (S&H). There is some evidence that QHR is merely a "dba" name of S&H and has no separate existence. However, there is also some contrary evidence that QHR may be a separate entity. The opening brief asserts that these two entities are one and the same, but the attached Certificate of Interested Entities or Persons suggests otherwise. We will use the term "appellants" to encompass both QHR and S&H collectively.

In this appeal, appellants contend that the trial court erred by issuing a right to attach order against them because:

1. Altisource failed to carry its burden of showing the probable validity of its breach of contract claim.

2. The trial court shifted the burden of proof by requiring defendants to produce evidence.

We find no error. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the declarations filed in support of and in opposition to the application for a right to attach order.

A.    *Altisource's Evidence*.

Altisource submitted the declaration of Tara Williams, its Vice President of Field Services.

Williams testified that Altisource is in the business of maintaining and selling foreclosed properties. Altisource contracts with outside vendors to do maintenance work on its properties, including repairs, painting, and cleaning.

In January 2011, QHR applied to Altisource to become an approved outside vendor. According to the application, the principals in QHR were Shahid Jalal and Ronald Singh. QHR had a California general contractor's license. QHR represented that it had no employees and no independent contractors. Altisource approved the application.

It was Altisource's policy not to ask for backup documentation for invoices of $500 or less. QHR was aware of this policy.

In October 2011, QHR submitted invoices totaling $172,786, supposedly for work done on Altisource properties in 26 states and the District of Columbia. None of the invoices was for more than $500. The invoice amounts were repetitive — they were all for either $350, $395, $450, $465, $475, $485, $499, or $500. There were multiple invoices for work done on the same property. For example, QHR submitted six separate invoices, each for work supposedly done on a property on 11th Avenue in Largo, Florida, in the amounts of $485, $500, $485, $395, $465, and $499.

3

QHR also claimed to have done work in multiple states on the same day.[1] For example, it submitted four invoices, all dated July 1, 2011, for work on properties in California, Texas, Ohio, and Georgia. It submitted invoices dated July 1 through July 7, 2011, for work on a total of 20 properties in nine states.

Altisource realized that the invoices were for work supposedly done after the properties had already been sold to third parties. It therefore asked QHR for supporting documentation. QHR responded that it could not provide the documentation because of a "computer malfunction."[2]

At that point, Altisource stopped making payments on the invoices. Meanwhile, however, it had already paid QHR $120,024.

B.     *Defendants' Evidence*.

Defendants submitted the declaration of Shahid Jalal, who testified that he was the "owner" of QHR.

---

[1]     This assumes that the date listed as the "[i]nvoice date" was when QHR supposedly did the work. In the trial court, Altisource adopted this interpretation, and QHR did not dispute it, even though it reflected negatively on QHR.

[2]     Altisource claims that one term of the contract to which QHR agreed was that QHR would produce backup documentation on request, so that its failure to produce backup documentation was, in itself, a breach. However, there is no *evidence* of this. Admittedly, Altisource's complaint did allege that this was a term of the contract, but the complaint was not verified and thus could not serve as evidence in support of the attachment application. (Code Civ. Proc., § 482.040.)

According to Jalal, Altisource requires vendors to submit invoices via its website. However, a vendor cannot submit an invoice until Altisource has set up a work order on its website.

Between June and August 2011, Altisource[3] gave QHR work orders by email and by phone. Most of these work orders came from Stanley Varghese, an employee of Altisource. QHR "completed the work orders per the requests made by Altisource." However, QHR could not submit invoices for those work orders until October 2011, which was when Altisource finally set up the work orders on its website. Jalal testified that "[a]ll the invoices submitted . . . were for work that was completed prior to October 2011."

When Altisource asked for backup documentation, QHR could not provide it because the hard drive of its computer had crashed. However, Jalal did tell Altisource that Varghese should have emails and other documentation.

II

PROCEDURAL BACKGROUND

Altisource filed this action against seven named defendants, including QHR and S&H, asserting causes of action for breach of contract, fraud, and money had and received, among other things. At the same time, it filed an application for a right to attach order against all defendants.

---

[3] Jalal was inconsistent about whether these work orders actually came from Altisource or from "Ocwen, the parent company of Altisource . . . ."

Defendants filed an opposition to the application. They argued, among other things, that Altisource had not shown the probable validity of its claim.

At the hearing on the application, counsel for defendants argued that there was no evidence that any of the defendants other than QHR and S&H were liable. The trial court granted the application solely as against QHR and S&H; with regard to the other defendants, it continued the hearing. It set a briefing schedule for defendants to submit additional evidence and for Altisource to reply.

The other defendants did file further briefing, but they did not file any additional evidence (other than one unauthenticated document to which Altisource duly objected). Altisource, too, filed further briefing, plus some additional evidence. After a further hearing, the trial court denied the application with respect to the other defendants.

III

THE SUFFICIENCY OF THE EVIDENCE OF A BREACH OF CONTRACT

Appellants contend that Altisource failed to show that the work that QHR submitted invoices for was not done.

An attachment must be based on a contract claim. (Code Civ. Proc., § 483.010, subd. (a).) To obtain a right to attach order, the plaintiff must establish the "probable validity" of its claim. (Code Civ. Proc., § 484.090, subd. (a)(2).) "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Code Civ. Proc., § 481.190.)

6

"A trial court's finding [of probable validity] will be upheld if supported by substantial evidence. [Citations.]" (*Series AGI West Linn of Appian Group Investors DE LLC v. Eves* (2013) 217 Cal.App.4th 156, 162.) "'"[W]e must consider the evidence in the light most favorable to the prevailing party, giving such party the benefit of every reasonable inference, and resolving all conflicts in support of the judgment. [Citation.]" [Citation.]' [Citation.]" (*Chino Commercial Bank, N.A. v. Peters* (2010) 190 Cal.App.4th 1163, 1169-1170 [Fourth Dist., Div. Two].)

Here, both parties failed to introduce evidence that one would have expected them to introduce — if it existed. For example, Altisource failed to introduce evidence of whether it ever actually issued work orders for the work that QHR claimed to have done.[4] It also failed to introduce evidence that it had checked with Stanley Varghese.[5] At the same time, however, defendants failed to introduce the alleged emails from Varghese (which would have survived a hard drive crash, because they would have been on Gmail's servers). It also failed to introduce any time sheets, invoices, receipts, or other documentary evidence that it had actually done the work.

---

[4] Williams did testify that "[t]he $120,024 paid to [QHR] was for work order[s] that were never authorized by Altisource." However, she did not explain how she knew they were never authorized. Thus, this was a legal conclusion, which, even absent objection, was not substantial evidence. (*Daniell v. Riverside Partners I, L.P.* (2012) 206 Cal.App.4th 1292, 1296, fn. 1 [Fourth Dist., Div. Two].)

[5] At the continued hearing, after the trial court had already granted a right to attach order as to QHR and S&H, counsel for Altisource claimed that Altisource had fired Varghese and believed he had been in on the fraud.

Even looking just at the evidence that is before us, however, there is substantial evidence that QHR was engaged in a fraudulent scheme. It represented that it had just two owners, no employees, and no independent contractors, and that it had a contractor's license only in California. Nevertheless, it submitted invoices for work done in 27 states — sometimes in as many as four far-flung states on a single day.

In addition, QHR submitted multiple invoices for work done at the same property. It broke these invoices down into amounts no greater than $500, in the knowledge that Altisource normally did not request backup documentation for invoices for $500 or less. The amounts of the invoices were suspiciously repetitive.

Finally, the invoices were for work supposedly done after the properties had already been sold to third parties. Jalal tried to explain that this was because he was not able to submit the invoices via Altisource's website until October 2011. Williams's declaration, however, fairly understood, stated that the dates when QHR *claimed to have done the work* — not merely the dates when QHR *submitted the invoices* — were after the properties were sold. The printouts attached to Williams's declaration supported this; they showed that Altisource was aware that QHR was at least claiming to have done the work between June and September 2011.

The evidence that it would have been almost impossible for QHR to have done the work that it claimed to have done, along with all of the other evidence of a fraudulent scheme, supported a finding that QHR did not actually do any of the work.

8

In their reply brief, appellants argue that the evidence showed, at most, a tort rather than a breach of contract. They forfeited this argument, however, by failing to raise it in their opening brief. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799.)

Separately and alternatively, the argument lacks merit. Attachment is permitted on "a claim . . . for money . . . based upon a contract, *express or implied* . . . ." (Code Civ. Proc., § 483.010, subd. (a), italics added.) Here, there was a failure of consideration — Altisource paid for work that was not done. "'It is well settled that when a sum of money has been paid pursuant to the terms of a sales contract and the consideration for the sale has entirely failed, the law will imply a promise on the part of the vendor to repay the money; and in such case an attachment will lie. [Citations.]' [Citations.] Moreover, attachment will issue on such an action, to recover money paid under a contract, on failure of consideration even though there was no rescission by plaintiff [citations] or rescission of the contract specifically pleaded. [Citation.]" (*Landry v. Marshall* (1966) 243 Cal.App.2d 170, 176.) We see no reason to treat a services contract differently from a sales contract in this respect.

We therefore conclude that the trial court correctly found that Altisource had shown the probable validity of a contract claim.

IV

SHIFTING THE BURDEN OF PROOF

Appellants contend that the trial court erroneously shifted the burden of proof to them.

Basically, they are complaining about two types of comments that the trial court made at the initial hearing.

First, the trial court pointed out that defendants had not introduced evidence that should have been readily available to them. For example, it stated, "[W]hether there's a computer crash or not, there should be somebody [Jalal] can talk to, if somebody did the work . . . ."

Second, the trial court suggested that defendants should submit additional evidence. For example, it stated: "[M]aybe [defendants] can help me out with a declaration explaining what this process is and who did what work when."

We consider the second type of comment first. It must be recalled that, at the initial hearing, the trial court *granted* the right to attach order as against appellants; it continued the hearing, and it allowed the parties to submit additional evidence, solely with respect to the other defendants. Accordingly, appellants could not possibly have been prejudiced by the suggestion that defendants submit additional evidence.

The challenge to the second type of comment also fails because the attachment statutes explicitly allow the court to request further evidence. Code of Civil Procedure section 484.090, subdivision (d), as relevant here, provides: "[U]pon good cause shown,

10

the court may receive and consider at the hearing additional evidence, oral or documentary, and additional points and authorities, or it may continue the hearing for the production of the additional evidence or points and authorities." This is true regardless of whether the moving party has carried its initial burden.

Also, appellants fail to mention the fact that their attorney had just said he wanted to submit additional evidence. He stated: "One other thing, I just received copies of the work orders . . . that w[ere] sent to Mr. Jalal. He's got those work orders, and I would like — I just got them. So I didn't have an opportunity to submit them."**6** In that context, there was nothing wrong with the trial court suggesting that he also submit any other evidence that it would find helpful.

This leaves only appellants' challenge to the first type of comment. We agree that Altisource had the burden of proving that defendants did not actually do the work. If Altisource failed to meet this burden, it would be error to grant the right to attach order solely because *appellants* did not prove that they *did* actually do the work. Here, however, as we already held in part III, *ante*, Altisource carried its burden.

At that point, the trial court could properly consider defendants' failure to introduce expected evidence. Evidence Code section 412 provides: "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce

---

**6** Even though the trial court continued the hearing and allowed the parties to submit additional evidence, defendants never actually filed these work orders.

11

stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."

We therefore conclude that the trial court did not erroneously shift the burden of proof.

V

DISPOSITION

The judgment is affirmed. Altisource is awarded costs on appeal against QHR and S&H.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI                  <br>J.

We concur:

HOLLENHORST        <br>        Acting P. J.

McKINSTER          <br>        J.